Raymond Wamhoff, Employee, v. Wagner Electric Corporation, Employer, Appellant.—No. 39629.—190 S. W. (2d) 915.

Court en Banc, November 5, 1945.

Rehearing Denied, December 3, 1945.

*Albert I. Graff* and *Malcolm I. Frank* for appellant.

*Morris G. Levin* and *Wayne C. Smith, Jr.,* for respondent.

CLARK, C. J.—Appeal by an employer from a judgment of the circuit court affirming an award of the Workmen's Compensation Commission in favor of an employee, respondent.

Respondent was injured while operating a buffing machine at his place of employment in appellant's plant. He had been employed by appellant about six and one-half years. At the time of injury he worked on a night shift from 4:15 P. M. to 12:30 A. M., in appellant's Department Six where plating, polishing and buffing of metals were done. Respondent's immediate foreman was one McGinley who on the day of the accident quit work at 5:00 P. M., leaving a list of things to be done by respondent and other employees who worked under respondent during McGinley's absence. A few hours later respondent plated and polished a gauge which had been sent in from another department. In doing this he put the gauge in a tank containing chemical solutions and also deposited in the tank a windshield frame of a toy automobile belonging to his infant daughter. He testified that in plating small articles it was best to have another piece of metal in the tank as "that uses up the amperage and gives it less chance to burn the other job," and that such was a common practice. Respondent first took the windshield from the tank, dipped it in hot water and left it to dry. Then he took out the gauge and after drying it put it in the buffing machine and polished it. Then he put the windshield in the machine and was polishing it when his attention was attracted to another employee and his left hand caught in the machine and was badly mangled, later requiring amputation. Other facts shown by the evidence will be mentioned later.

In their briefs and oral arguments the parties differ as widely in interpreting the evidence as in applying the law.

Appellant contends that, because respondent was operating the machine for his personal benefit and not for the benefit of his employer at the moment of injury, the accident did not arise out of or in the course of employment as the statute requires.

Respondent answers: that the evidence shows a widespread practice among the employees, continuous over many years, to do private work for themselves and other employees; that this practice was known to and countenanced by the foremen; that respondent's foreman had instructed him and other employees to keep busy on private work when not engaged on company work; that respondent was injured while at his place of duty and while doing an act which his employer might reasonably have anticipated and which was an incident ▮▮▮ of his employment; and, therefore, the injury arose out of and in the course of the employment.

▮ The courts of this and other states have often found it necessary to construe the phrase "arising out of and in the course of employment," but no all-embracing definition has yet been framed. As we said in Leilich v. Chevrolet Motor Company, 328 Mo. 112, 40 S. W. (2d) 601, 605, every case involving this phrase "should be decided upon its own particular facts and circumstances and not by reference to some formula."

In many cases the injuries occurred while employees were away from the place of work. We do not have that problem here. Some cases hold there can be such a departure from the terms of employment as to deny compensation to an employee for an injury occurring while he is at the place of employment and that such departure may be only a brief one. Yet other cases have granted compensation for injuries which occurred at times when the employees were not engaged in the work of their employers or in any work at all. Those cases are not necessarily inconsistent. Each case has turned upon the point of whether, under its particular circumstances, the injury arose from something which had become an incident to the employment.

In the instant case respondent was injured while engaged in doing an act for his own benefit or pleasure. Unless there is substantial competent evidence to show that, by the conduct of the parties, the activity in which respondent was engaged at the time of injury had become an incident to his employment he is not entitled to compensation. If there is such evidence we are bound by the finding of the Commission and must affirm the judgment of the circuit court affirming the award. Further, we must consider the evidence, together with all reasonable inferences to be drawn therefrom, in a light most favorable to support the award. [Leilich v. Chevrolet Motor Company, supra; Hanley v. Carlo Motor Service Company (Mo. App.), 130 S. W. (2d) 187.]

The oral testimony for respondent was given by him and three other employees. The only witness for appellant was McGinley, the foreman of Department Six. Respondent and his witnesses testified to the effect that during the entire time of their employment, (one had worked there for eighteen years) work was frequently done by them for themselves and employees of other departments without a work order and without accounting to the company for either the work or materials; that this was known to McGinley; that McGinley did some of this work himself and never objected to its being done by others. One witness said that on at least six occasions the general superintendent had such private work done. Respondent testified that he did anything necessary to be done and that one of his particular duties was to operate the buffing machine; that in the absence of McGinley respondent was supervisor over the other men in his department, and used his discretion as to the work they should do; that McGinley instructed them to keep busy even if the work got slack. A portion of respondent's testimony is as follows:

"Q. (Mr. Levin) Mr. Wamhoff, did Mr. McGinley ever give you any instructions or say anything to you with respect to what was to be done when work got slack in the department? A. Yes, he said if work got slack we should keep ourselves busy doing something, that we could always find something to do around there. Q. Did Mr. McGinley try to encourage you and the others to learn new ways of

plating and buffing? A. Yes, he told me to get any experience I possibly could on all kinds of work—never knew when something new would come up."

McGinley, the only witness for appellant, contradicted respondent's testimony on some points. He denied that it was a part of respondent's duty to do buffing, but admitted that he had told him to do it on one occasion and no claim is made that he was ever told not to do it. He admitted that he told respondent and others to keep busy and to practice on other objects when out of company work, but said such practice did not include buffing. He admitted that private work was sometimes done; that he did some of it and told other employees to do it, but only when it was a small job requiring little time. He said that the doing of such work was within his discretion. He said respondent was supervisor of the department during his (McGinley's) absence.

While respondent was in the hospital, appellant took two statements from him, . . . three and eight days, respectively, after the injury. While on the witness stand, respondent was questioned about those statements and they were introduced in evidence by appellant, presumably as admissions. In one of the statements, respondent said:

"I believe that its understood that this private work is against the rules at Wagner Electric Corporation. I'm sure its agin the rules to do it or have it done, without an order for the work. When we want private work done, we are supposed to get an order for it and pay for the work. I think there is a minimum charge of a dollar for doing this type of work—private work. I didn't get any order to have the parts of my toy automobile plated or buffed in the department, and I had no one gave me permission to do the work I was doing on the frame when I was injured. I never asked any permission and didn't plan to pay for the work."

In his testimony respondent said that, while there was no written rule, he understood that it was against the rules to do private work if it interfered with company work. In reference to his previous statements, he gave the following testimony on cross-examination:

"Q. It was understood . . . you understood that to be against the rules to do it without getting an order? A. What I meant to say, it was agin the rules to do any private work except your Department if it interfered with your own work because Mr. McGinley always told me not to do any outside work if it interfered with my work."

From the entire record we must conclude that there was substantial competent evidence of the following: that a widespread and long continued practice existed for the employees to do private work for their own benefit provided the same did not interfere with company work; that this practice was known to and approved by the foremen and the general superintendent; that there was no written rule against such practice and if there was a rule of any kind it was more honored

in the breach than in the observance; that not only did such practice exist with the approval of the company, but the employees were encouraged to engage in the practice in order to teach them new methods.

Much of respondent's evidence was corroborated by appellant's witness; some of it was controverted. That made a question of fact to be decided by the Commission whose province it also was to decide the reasonableness of respondent's explanation of his previous statements. In this kind of a case an appellate court does not pass upon the weight of the evidence.

We have examined the cases cited in the briefs and will briefly review such of them as the parties contend are based upon facts similar to those in the instant case.

First, as to cases cited by appellant: Beem v. Lee Mercantile Company, 337 Mo. 114, 85 S. W. (2d) 441. A traveling salesman after finishing his work in one town went to an all night restaurant to play cards with companions until a late hour. He then started to another town on his route and was robbed and killed. The employer claimed the employee had departed from his employment. We held the injury and death compensable and find nothing in the result or discussion which can help appellant in the instant case. In Cassidy v. Eternit, Inc., 326 Mo. 342, 32 S. W. (2d) 75, the accident did not occur at the place of employment or while performing any duty of the employment or having a causal connection therewith. Wahlig v. Grocer Company, 325 Mo. 677, 29 S. W. (2d) 128, held compensable an injury to a traveling salesman whose automobile was struck by a train at a public crossing. He was on his way to collect an account and sell goods for his employer and we said the public streets were within the place of employment. In Kasper v. Liberty Foundry Company (Mo. App.), 54 S. W. (2d) 1002, the St. Louis Court of Appeals denied compensation for an injury to a workman who left his place of employment and went to a different department, where a positive rule forbade him to go, to do work for his own benefit. This case may to some extent fit appellant's view of the evidence in the instant case, but not that of respondent. In Mulligan v. Oakes (Conn.), 23 Atl. (2d) 870, a workman was denied compensation for an injury received during his hours off while driving his employer's car for his own pleasure, but with his employer's consent. What is said in Atlantic Refining Company v. Sheffield (Ga.), 134 S. E. 761, supports appellant in the instant case, but the question actually decided does not. There a workman was injured while using his employer's time and material for his own benefit in violation of a duly promulgated written rule. In Dunn v. University (N. Y.), 194 N. E. 856, compensation was denied to a claimant employed to operate a gasoline filling station and who was injured in conducting a side line business for his own

profit. The side line was conducted with the permission of the employer.

Respondent cites the following cases, among others, in which injuries were held compensable: Leilich v. Chevrolet Motor Company, 328 Mo. 112, 40 S. W. (2d) 601, where a salesman met death while changing a tire on his employer's automobile in a garage in the rear of the salesman's home, preparatory to making a trip for his employer. Conklin v. K. C. Public Serv. Co. (Mo. App.), 41 S. W. (2d) 608, where a machinist employed by a street railway was injured while playing in a game of indoor baseball in a building owned by the employer. Such games had been played by the employees for a period of four years with the knowledge and consent of the employer. In M. P. Gustafson v. Ind. Commission (Ill.), 180 N. E. 567, an employee was injured while either walking alongside or riding upon a moving crane. One defense was departure from employment by riding on the crane in violation of orders. Held, if such orders were ever given they had been abandoned in view of the evidence showing that the employees frequently rode upon the crane and none had been reprimanded or discharged. National Biscuit Company v. Roth (Ill.), 146 N. E. 410, where a bakery employee fell out of a window where he had gone during a rest period for relief from heat and for fresh air. In re Von Ette (Mass.), 111 N. E. 696, where a printer fell from the roof of a building adjoining his place of work, he having gone there for fresh air on a hot night. In this case there was proof of a rule forbidding employees to leave the room during working hours, but the rule was held to have been abandoned by frequent violation and non-enforcement.

The decisions mentioned in the preceding paragraph and many similar cases generally take the position that the activities of the injured employee, under the particular circumstances, should have been reasonably anticipated and expected by the employer and had become an incident to the employment. In the instant case there is substantial evidence not only that appellant should have anticipated the activities of respondent and other employees in doing private work, but that it encouraged such activities, so long as they did not unduly encroach upon company work. Also, that this was not merely a privilege extended to the employees, but the appellant expected to derive benefit by teaching the employees new methods and thereby improving the quality of their work.

"An injury suffered by an employee while performing an act for the mutual benefit of the employer and the employee is usually compensable, for when some advantage to the employer results from the employee's conduct, his act cannot be regarded as purely personal and wholly unrelated to the employment. Accordingly an injury resulting

from such an act arises out of and in the course of the employment; and this rule is applicable even though the advantage to the employer is slight." [71 C. J., p. 675, sec. 420.]

For the reasons stated the judgment is hereby affirmed. All concur.