Bernard Leroy **LIVERMAN**, Respondent,

v.

William B. **WAGNER**, d/b/a Bill Wagner's 33-71 By-Pass Service Station, and United States Fire Insurance Company, Appellants.

No. 24095.

Kansas City Court of Appeals.

Missouri.

Oct. 5, 1964.

Application to Transfer Denied Feb. 8, 1965.

Fred J. Freel, Sheridan, Baty, Markey, Sanders, Edwards & Carr, Kansas City, for appellants.

Max Von Erdmannsdorff, Sevier & Turnage, Liberty, for respondent.

MAUGHMER, Commissioner.

This is a Workmen's Compensation case.

The plaintiff, Bernard Leroy Liverman, was in the general employment of the defendant Wagner as a service station attendant. Wagner, for advertising purposes, sponsored Liverman's activities as an automobile "drag racer". On July 28, 1962, plaintiff, with the permission of his employer, drove the service station truck on a trip to pick up an engine for installation in the racing car. While on this trip an automobile accident occurred and plaintiff sustained injuries.

After a hearing on his claim for benefits, the Industrial Commission entered a final award allowing plaintiff the sum of $9,331.-77. Defendants, the employer and the insurer, appealed from the judgment of the circuit court which affirmed that award. On appeal they assert that claimant's injuries did not arise out of and in the course of his employment and the Commission's conclusion that it did so arise, is not supported by "sufficient competent evidence".

The burden is upon claimant to bring himself within the applicability of the

Workmen's Compensation Act. Kemper v. Gluck, 327 Mo. 733, 39 S.W.2d 330, 333; Wilkerson v. Potashnick, Mo.App., 226 S.W.2d 402, 403; McCaleb v. Greer et al., 241 Mo.App. 736, 267 S.W.2d 54, 59.

██ An appellate court, in reviewing an award by the Industrial Commission, must consider the evidence in the light most favorable to the prevailing party. Harper v. Home Imp. Co. et al., Mo., 235 S.W.2d 558. Neither this court nor the circuit court may substitute its judgment for that of the Commission but rather must approve and affirm the Commission's award if upon the whole record it is supported by competent and substantial evidence. Constitution of 1945, Art. V, Sec. 22, V.A.M.S.; Brown v. Griesedieck Western Brewing Co. of Missouri et al., Mo.App., 250 S.W.2d 803; Long v. Mississippi Lime Co. of Mo. et al., Mo.App., 257 S.W.2d 167, 170.

██ In attempting to define the phrase "arising out of and in the course of such employment", (Sec. 287.020(6), V.A.M.S.) and in determining if this requirement has, under a given state of facts, been met, certain rules of consideration and approach have been laid down by our appellate courts. Every such case should be decided upon its own particular facts and circumstances. Goetz et al. v. J. D. Carson Co. et al., 357 Mo. 125, 206 S.W.2d 530; Foster v. Aines Farm Dairy Co. et al., Mo., 263 S.W.2d 421, 423. An injury arises "out of" the employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. And an injury arises "in the course of" the employment when it occurs within the period of his employment, *at a place where he may reasonably be and while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental thereto*. Foster v. Aines, supra; Goetz v. J. D. Carson Co., supra; Tabor v. Midland Flour Milling Co. et al., 237 Mo. App. 392, 168 S.W.2d 458.

██. Concisely stated, we must here decide if the Commission's determination that claimant's injury was the result of an accident "arising out of and in the course of" his employment, is supported by substantial and competent evidence on the whole record.

Claimant testified that prior to the accident on July 28, 1962, he had been employed at defendant's service station located at the junction of highways 33–71, Liberty, Missouri, for "approximately a year" as an attendant. His regular duties included the normal ones of servicing cars, pumping gas, changing oil, repairing tires and occasionally making calls with the service truck. In November or December, 1961, he "acquired a competition coupe auto body" and began assembling various parts for the car which he planned to use in drag racing competitions. He entered his first race in May, 1962, and the entry was announced as "Bernard Liverman— Pussy Cat—sponsored by Bill Wagner's 33–71 Service Station". Plaintiff said that prior to this first race defendant "had consented to the sponsorship of my car" and "we got together and drew out on paper and decided what kind of sign would be most impressive to the public and upon that decision he told me to go to Bob Kimbrough down by North Town or Gladstone to have the lettering done". Photographs were received in evidence showing this lettering. The wording in large blocks on the back of the car was " 'Bill' Wagner 33–71 Service-Vickers-Liberty Missouri". The word "Vickers" in the advertising is the name of the gasoline sold at the Wagner station. Plaintiff stated that he owned the car but defendant agreed to furnish "the gas and oil, the oil filters and from time to time a few other things and, of course, the use of the truck", meaning Bill Wagner's service truck. Claimant won his first race and was awarded a medal or trophy. Defendant Wagner paid for having the following wording engraved on the trophy: "Bernard Liverman B. Competition E. T." (elapsed time) "12:59, 5–6–62 K.C.Mo. Sponsor Bill Wagner".

Plaintiff engaged in races on alternate Sundays thereafter until the accident and

on each occasion except the first, used the service station truck owned by defendant to "pull it". Plaintiff testified that he also used the truck "to carry gasoline in cans, and I used the tools in the back of the truck and when we got to the station and unhooked the car from the truck we used it to push the car to start it * * *". The truck was also used to push the car through the pit and up onto the drag strip just before the races started. The truck was marked on both sides "Bill Wagner's 33–71 Service, gas, oil, tires". Plaintiff won his second competition on May 20, 1962, and again received a trophy which he and defendant caused to be engraved similarly to the first trophy. This procedure was continued with Liverman winning all races but one. In June he decided to enter a race which was to be held at Topeka, Kansas. Liverman testified that Wagner told him to use the truck to transport the racer, but the truck bed was too short so at defendant's suggestion they lengthened the truck bed by attaching heavy planks to the read end, and in this manner were able to transport the racing car to Topeka, where plaintiff again won first place.

In all of these races plaintiff, as driver, wore his service station uniform with the station lettering on the back. Plaintiff said he did this at defendant's suggestion. Defendant arranged for plaintiff to be off from work at the station on every other Sunday so he could race. Pictures were taken of the racing car and defendant displayed these pictures on the station bulletin board.

Plaintiff recited a telephone conversation which he said he had with defendant on the morning of the accident as follows:

(Plaintiff) "This is Bernie. Shall I go down and get the engine for the coupe?

(Defendant) "Yes, you need it, don't you?

(Plaintiff) "Yes, I want to try to get it in the car before the race".

Plaintiff said defendant told him to "have the truck back by afternoon". It was on the trip to get the engine that the accident occurred and plaintiff was injured. The fact of the accident, plaintiff's injuries, and the extent thereof are not disputed. Mr. Wagner, the defendant, died after the date of the accident and before the trial. However, his deposition had been taken by the insurer and the Dead Man's statute was waived. Defendant admitted plaintiff was using the truck at the time of the accident with his express permission.

We quote in part from the final award of the Commission:

"Without belaboring the evidence in finer detail, we think the record fully indicates that the employer not only had the right to control the racing activities but that in numerous details he actually exercised that right. We view the claimant's racing activities as extension of his original duties as a service station attendant. The right of an employer to increase the scope of the employment can hardly be doubted. See Nichols vs. Davidson Hotel Co., 333 SW 2d 536.

"Further, the advantages flowing to the employer from the racing activities of his employee were very real. Advertising is the life blood of modern trade and commerce. The employer fully capitalized on the publicity boon provided by Liverman's racing triumphs. Compare the benefits flowing to the employer in Wamhoff vs. Wagner Electric Corp., [354 Mo. 711] 190 SW 2d 915.

"We accordingly find that the employee sustained an accident on July 28, 1962, arising out of and in the course of his employment with William B. Wagner, d/b/a Bill Wagner's 33–71 By-Pass Service Station, and that as a result of said accident he * * *"

The injury was sustained while plaintiff was doing something incidental to his em-

ployment. Advertising is a part of the operation of any business, including the operation of a service station. Defendant sponsored, for advertising purposes, plaintiff's competition in these drag races. He paid part of the costs, furnished some of the equipment used, placed advertising on the racing car itself and had his name and business engraved on the trophies, and displayed pictures of the racing car at his place of business. He consented to the use of his truck to push, pull, tow and haul the racing car and transported tools and parts in the truck. He arranged for plaintiff to be off work on racing days. He actively participated as sponsor and partner. There is surely a causal connection between this incidental part of the employment and the injury incurred on a trip to "pick up the engine" for installation in the racing car, which was being raced partly, at least, as an advertising promotion for the Wagner Service Station. It is not unusual for automobile, gasoline, tire and automotive parts companies and their retail outlets to sponsor and advertise their products in this manner. Rather such is a common practice which may be observed at the Indianapolis Speedway or at any small town half-mile track. In LeBar v. Ewald Bros. Dairy, 217 Minn. 16, 13 N.W.2d 729, the employee was injured in a baseball game sponsored by the employer. The court held the injury arose out of his employment. The decision in LeBar and in Fishman v. Lafayette Radio Corp., 275 App.Div. 876, 89 N.Y.S.2d 563, were both based primarily upon the value of the advertising to the employer.

In 99 C.J.S. Workmen's Compensation § 221, page 730, this general statement appears: "An injury suffered by an employee while performing an act for the mutual benefit of the employee and the employer is usually compensable". Although plaintiff was not paid a salary or any wages by defendant for these racing activities, nevertheless defendant did contribute a part of the cost and benefitted by the advertising of his business products.

We believe the injuries sustained by plaintiff were suffered while performing an act for the mutual benefit of himself and his employer and in furtherance of defendant's planned campaign of advertising.

We have examined the cases cited by defendant. Some have to do with farm labor and some involve injuries sustained when the employee was engaged in some activity solely his own and unconnected in any way with the employer's business.

In our opinion the conclusion of the Commission is supported by substantial and competent evidence. We find no reversible error. Therefore the judgment of the circuit court affirming the final award by the Commission is by us affirmed.

SPERRY, C., concurs.

PER CURIAM:

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.