Lillian LEONE, Respondent,

v.

**AMERICAN CAN COMPANY, Appellant.**

No. 24597.

Kansas City Court of Appeals.

Missouri.

Feb. 6, 1967.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 3, 1967.

Application to Transfer Denied May 8, 1967.

Harold T. VanDyke, Linde, Thomson, VanDyke, Fairchild & Langworthy, Kansas City, for appellant.

Terence L. Connaughton, Kansas City, for respondent.

HOWARD, Presiding Judge.

This is a workmen's compensation case wherein the self insured employer has appealed from the action of the circuit court affirming the award of the Industrial Commission granting benefits to the widow of the deceased employee. This appeal was originally lodged in the Supreme Court of Missouri but was transferred to this court by order of the Supreme Court.

Henry S. Leone was an employee of the American Can Company at its plant in North Kansas City, Missouri, on November 2, 1963, when he was crushed by the counterweight of an elevator and received injuries resulting in his death on the same day. The accident occurred on a Saturday, when the plant was not operating at full capacity. He had been assigned to checking, cleaning and repairing air lines to machinery on the second and third floors of the plant.

Sometime between 11:00 and 11:30 A.M., Mr. John W. Slayton, another employee of the American Can Company, started to go to lunch from his work place on the fourth floor of the plant. Near elevator No. 1, located at the west side of the north end of the plant, Mr. Slayton pulled his car keys from his pocket and dropped them on the floor. The key to the trunk of his car fell down the elevator shaft. He then rode the elevator to the first floor and walked down to the basement of the plant. He was seeking access to the pit of the elevator shaft to look for his car key. In the basement he opened the door of the millwrights' washroom and saw Mr. Henry Leone inside. He asked Mr. Leone how to get into the elevator shaft and Mr. Leone pointed out the opening. Without further conversation, Mr. Slayton went into the elevator shaft,

through the opening which he describes as more like a tunnel, about three feet square and about six feet long. In order to get into the elevator shaft, he had to crawl over pipes and through this tunnel-like opening. There was an electric light on the underneath side of the elevator car by which Mr. Slayton could see to look for his car key. As the elevator went up the light became dimmer and as the elevator came down the light became brighter because of its nearness to the person in the elevator shaft. Soon thereafter Mr. Slayton saw Mr. Leone squatted down in the entrance to the elevator shaft at the edge of the shaft. It developed that Mr. Leone was squatted down between two uprights which guided the counterweight of the elevator. Mr. Leone warned Slayton of the danger of his position in the elevator shaft and told him if the elevator got too low, he should either lie down or get out of the shaft. Slayton continued to look for his key and the light on the bottom of the elevator got dimmer, indicating that the elevator was going up. He then heard a sound like the "air going out of somebody." He looked around and saw Mr. Leone crumpled down close to the ground with the elevator counterweight on his back. For just a second there was slack in the cable holding the counterweight. Mr. Slayton yelled for the man on the elevator to bring the elevator down to raise the counterweight. This was done and after securing assistance, Mr. Leone was taken from the elevator shaft, the nurse was called and he was taken to the hospital where he died that afternoon. Mr. Slayton testified that immediately prior to the time that Mr. Leone was crushed by the counterweight, "he was warning me of the danger of the elevator coming down."

Mr. Leone was employed as a member of the maintenance department. The testimony showed that it was the duty of the maintenance department to maintain the plant and the machinery therein and that members of this department frequently had occasion to go into the elevator shaft to

make minor elevator repairs, to retrieve objects which had been dropped down the elevator shaft and, when the shafts were flooded, to pump them out. The elevator shafts were recognized as places of danger and it was the practice that no one went into them alone. Two men always went in together, the second man being described as a "backup" or "safety" man. There was no rule, regulation or directive of the employer forbidding employees going into the pits of the elevator shafts and no warning was posted at the entrance and the entrance was in no way barred or locked. It is admitted that Mr. Leone had not been assigned to any duty on this day which would require him to go into the pit of the elevator shaft where he met with his fatal accident.

The Industrial Commission, by its award, found that Mr. Leone met his death by accident which arose out of and in the course of his employment. In the additional findings of fact and conclusions of law it determined that Mr. Leone, when he came to the entrance of the elevator shaft, was acting solely to aid and safeguard his fellow employee, Slayton, and to warn him of the dangers if the elevator should descend while he was in the pit of the elevator shaft.

▆▆ Appellant contends that this award is erroneous and that the trial court erred in affirming it because there was not sufficient evidence in the record to support the award; the facts found by the commission did not support the award; and the accident which resulted in Mr. Leone's death did not arise out of or in the course of his employment. In considering this contention, we must remember that the burden rests upon the claimant to bring himself within the provisions of the Workmen's Compensation Act and in this case, specifically, to show that Mr. Leone's death resulted from an accident which arose "out of and in the course of his employment," as required by Section 287.120, paragraph one, RSMo 1959, V.A.M.S., Ossery v. Burger-Baird Engraving Co., Mo., 256 S.W.

2d 805; Duff v. St. Louis Mining and Milling Corp., 363 Mo. 944, 255 S.W.2d 792 and Smith v. Levis-Zukoski Mercantile Co., 223 Mo.App. 743, 14 S.W.2d 470. We are required to consider the evidence in the light most favorable to the decision of the Industrial Commission, but we cannot weigh the evidence ourselves and cannot substitute our judgment for the judgment of the commission. In reaching our decision we must defer to the determination of the commission as to the credibility of the oral testimony. If the award of the commission is supported by competent and substantial evidence, it must be affirmed, unless we find that it cannot be sustained because it is contrary to the overwhelming weight of all the evidence in the record. Toole v. Bechtel Corporation, Mo., 291 S.W.2d 874; Thompson v. Otis Elevator Co., Mo.App., 324 S.W.2d 755; Liverman v. Wagner, Mo. App., 384 S.W.2d 107 and Shireman v. Rainen Home Furnishers, Inc., Mo.App., 402 S.W.2d 64.

In its brief, appellant repeatedly asserts that there is no evidence whatever in the record as to the reason why Mr. Leone went into the elevator shaft. It contends that the most logical conclusion would be that Mr. Leone went into the elevator shaft to help Slayton find his car key or simply out of curiosity as to what was there at the bottom of the elevator shaft. It contends that when Mr. Leone appeared at the opening of the tunnel into the elevator shaft, he did not do anything; "he just sat there watching." It further states, "There is absolutely no evidence that Mr. Leone entered the tunnel to safeguard his fellow employee and such assumption is without basis of fact." The Industrial Commission, as heretofore mentioned, found "the purpose of the deceased was to aid his fellow workman and warn him of the danger involved" in his position at the bottom of the elevator shaft. The only testimony in the record on this point is that of Mr. Slayton, who testified unequivocally that he did not ask Mr. Leone to help him look for his car key and that the first he knew

of Mr. Leone's presence, was when he saw him squatting down at the entrance of the tunnel leading from the basement to the elevator shaft and between the uprights which guided the elevator counterweight. He further testified that Mr. Leone did not move from this position, but immediately advised him of the danger from the descending elevator and that if the light on the underneath side of the elevator got brighter it indicated the elevator car was coming down, and if the elevator car came too close that he (Slayton) could either lie down or get out of the elevator shaft. Slayton testified that this warning was given immediately before the counterweight crushed Mr. Leone.

■ While admittedly we have, and can have no direct evidence of the subjective intent of Mr. Leone when he entered the elevator shaft, we do have the evidence of what he, in fact, did and from this it is reasonable to infer that he entered for the purpose of doing that which he actually did. From this evidence the Industrial Commission concluded that Mr. Leone entered the elevator shaft for the purpose of warning Slayton and we find that this conclusion of the commission is supported by competent and substantial evidence and is not contrary to the overwhelming weight of all the evidence.

Appellant asserts that this accident occurred while Mr. Leone was on his lunch hour. There is some minor conflict in the evidence on this point, but we agree with the Industrial Commission that it is not necessary to make a finding on this issue because such fact is not determinative of the case.

■ The issue thus presented is whether or not the record, as we have heretofore summarized it, contained competent and substantial evidence to support the finding of the commission that the accident which resulted in Mr. Leone's death arose out of and in the course of his employment. We conclude that the evidence does support this finding of the commission. Mr. Leone was a member of the maintenance department at employer's plant. It was the duty of this department to keep the building in repair and the machinery in operating condition, and, in connection with their duties, members of this department often had occasion to go into the pits of the elevator shafts to make minor elevator repairs and to retrieve objects which were dropped down the elevator shafts and to pump out the shaft pits when they became flooded. It further appears that it was the practice for two men to go together whenever it was necessary to go into the elevator pits; the second man to act as back up or safety man and to warn if danger appeared from a descending elevator. Mr. Leone had been working on the second and third floors of the plant and Slayton found him in the millwrights' washroom, which was used by the members of the maintenance department. He was washing his hands at a time shortly before he might reasonably be expected to go to lunch, although on this Saturday, when the plant was not fully operative, the lunch hour seems to be somewhat vague. In any event, Mr. Leone directed Mr. Slayton to the entrance of the elevator shaft and very shortly followed Mr. Slayton into the shaft, warning him of the danger and immediately thereafter was crushed by the counterweight. Admittedly, Mr. Leone had no reason to be in the elevator shaft in carrying out the duties specifically assigned to him that day of checking, cleaning and repairing air lines. However, it does appear that when Mr. Leone saw a fellow employee go into the elevator shaft, he left what he was doing (washing his hands) and followed him into the elevator shaft and warned him of the danger. Mr. Leone was, in fact, acting according to the custom of the plant to always enter the elevator shaft in pairs. He, in fact, acted as the safety or back up man in warning Slayton of the danger. Such entry into the elevator shaft was not forbidden by any rule, regulation or directive of the employer and this action of Mr. Leone was not for his own benefit but was, we believe, for the bene-

fit of the employer to help protect a fellow employee from the dangers inherent in the elevator shaft, which was a part of the employer's premises. His death resulted from an accident which occurred on the employer's premises during his regular time of employment, at a place where it might reasonably be anticipated that Mr. Leone would be and while performing a duty which was reasonably incident to his overall employment and for the benefit of the employer.

 The coverage of the Workmen's Compensation Act is not limited to injuries which result while the employee is engaged solely, strictly and only in activities specifically assigned to him. The employee is not required to limit his activities to the performance of those acts specifically authorized in robot-like fashion. He is both permitted and expected to use his intelligence to do that which is necessary in the course of his employment for the benefit of his employer. Even though his judgment might be faulty as to what should be done, or the manner in which it should be done, or as to what will, in fact, tend to benefit the employer, the employee does not forfeit his right to workmen's compensation when he proceeds in good faith according to his own judgment. See Ransdell v. International Shoe Co., 329 Mo. 47, 44 S.W.2d 1, 82 A.L.R. 1249, and Conyers v. Krey Packing Co., Mo.App., 194 S.W.2d 749. When we remember that Mr. Leone was a member of the maintenance department and that men in this department performed duties all over the plant, performed all kinds of functions in keeping the plant in operating condition, and that their activities specifically and properly, on occasion, included going into the elevator shafts to make minor repairs on the elevators and to retrieve objects that had been dropped into the elevator shaft, we can only conclude that the accident occurred when Mr. Leone was at a place where he could reasonably have been expected to be, and when he was doing something which was not forbidden and which Mr. Leone believed to be

for the benefit of his employer. In light of the fact that the employees never went into the elevator shafts alone, we believe that the commission was justified in concluding that Mr. Leone entered into the elevator shaft as a safety man and that he was in the process of warning Slayton of the dangers when the accident occurred, and that such activities were reasonably incident to Mr. Leone's employment. See Leilich v. Chevrolet Motor Co., 328 Mo. 112, 40 S.W.2d 601; Wamhoff v. Wagner Electric Corp., 354 Mo. 711, 190 S.W.2d 915, 161 A.L.R. 1454; Culberson v. Daniel Hamm Drayage Co., Mo., 286 S.W.2d 813; Daniels v. Krey Packing Co., Mo., 346 S. W.2d 78; Jordan v. Chase Hotel, Inc., Mo. App., 244 S.W.2d 404; and Liverman v. Wagner, Mo.App., 384 S.W.2d 107.

The commission could reasonably find that the accident occurred while Mr. Leone was engaged in an activity which could reasonably be anticipated by the employer; that he was in a position where the employer could reasonably anticipate that he would be; and that he had not abandoned his employment when he went into the elevator shaft after Mr. Slayton for the purpose of warning him of the dangers therein. See Wamhoff v. Wagner Electric Corp., 354 Mo. 711, 190 S.W.2d 915 and Culberson v. Daniel Hamm Drayage Co., Mo., 286 S.W.2d 813.

Whether or not Mr. Leone was on his lunch hour would not change our conclusion. Even though we may assume he was on his lunch hour, such fact did not militate against a finding that the accident here arose out of and in the course of his employment. See Daniels v. Krey Packing Co., Mo., 346 S.W.2d 78 and Thompson v. Otis Elevator Co., Mo.App., 324 S.W.2d 755.

On the basis of the foregoing, we conclude that the record herein contains competent and substantial evidence to support the finding of the commission and that such finding is not contrary to the overwhelm-

ing weight of all the evidence, and, therefore, affirm the judgment of the trial court affirming the award of the Industrial Commission.

All concur.