James E. SNOWDEN, Employee, Plaintiff-Respondent,

v.

ORSCHELN BROTHERS TRUCK LINES, INC., Employer; Queen Insurance Company of America, Insurer, Defendants-Appellants,

Marathon Division of American Can Company, Employer, Defendant-Respondent.

No. 33277.

St. Louis Court of Appeals.

Missouri.

Sept. 16, 1969.

Motion for Rehearing or Transfer to Supreme Court Denied Oct. 14, 1969.

Graff & Lahey, Sandor Korein and Malcolm I. Frank, St. Louis, for defendants-appellants.

Luke, Cunliff, Wilson, Herr, Chavaux & McCluggage, St. Louis, for defendant-respondent.

Ernest L. Keathley, Vernon C. Oetting, St. Louis, for plaintiff-respondent.

WOLFE, Presiding Judge.

This case comes to the writer upon reassignment. It is an appeal from a judgment of the circuit court affirming an award made by the Industrial Commission of Missouri in favor of the claimant, James E. Snowden, against Orscheln Brothers Truck Lines, Inc. and its insurer, Queen Insurance Company of America.

The main thrust of the points raised by the appellants is that under the law and the evidence the Commission should have held that the claimant was not an employee of Orscheln Truck Lines, Inc. It is contended that, although he was in the general employment of Orscheln, he was at the time of his injury a loaned employee working for the Marathon Division of American Can Co.

Snowden, the claimant, testified that he started his employment with Orscheln Truck Lines in November of 1960. He was a maintenance man and his general work consisted of fueling trucks, changing and checking tires, servicing refrigeration equipment, keeping records and making some minor repairs. He owned a panel truck with three seats in it. He frequently made trips in his own truck hauling tires, tools, or whatever was required to service a tractor-trailer that had broken down on the road. These trips were made at the request of "Ted" Orscheln, president of the company.

Snowden would be called by Orscheln at any time during the night or day and Orscheln would ask him to take care of a unit that was broken down. He would work overtime about two days each week.

About 10:30 in the morning of March 9, the day of an accident in which claimant was injured, Orscheln asked Snowden, the claimant, if his truck could haul 1,000 pounds of boxes. He said that he had a customer who needed them. Snowden said that he could haul the boxes and Orscheln told him to take the seats out of his panel truck and Snowden did so. He agreed to haul the boxes for Orscheln before he knew who they were for. He went to the office at about noontime and Orscheln asked if his work was finished and he said that it was and he was ready to go.

From the time Snowden started to work for Orscheln Brothers Truck Lines it had as customers F. M. Stamper Co. of Marshall, Missouri, and the Marathon Division of American Can Co. Stamper Company processed cardboard boxes for frozen dinners. The company purchased the boxes "knocked down" or in flat cardboard shape 'rom the Marathon Division of the American Can Company. Mr. Manning, who was the salesman for the Marathon Division, had called Orscheln the morning of the ninth and asked if delivery of a part carload of boxes being shipped by the Marathon Division and on a rail siding at St. Louis could be sent to the Stamper Company that day by Orscheln. He told Orscheln that the Stamper Company was out of boxes and would have to close down unless such a delivery could be made that evening. Orscheln told him that it would not be possible to load a tractor-trailer unit and get it to the Stamper Company at Marshall, Missouri, that soon. He said that he might get a man to take up a sufficient quantity of boxes to keep the Stamper Company going until the full shipment arrived.

When Snowden, the claimant, went into Orscheln's office, all that he knew about the prospective trip was that he was to haul 1,000 pounds of boxes for Orscheln to a customer that needed them. Orscheln called Manning by phone when Snowden came into the office and told him that he had someone to haul the boxes. He told Manning that the trip would cost fifteen cents a mile or a sixty dollar total and asked Snowden, the claimant, if that would be enough. Snowden said that it would be and the sixty dollars was to be paid by Manning to Snowden when he reached the Stamper plant. Orscheln told Snowden that he would be working for Marathon and not for Orscheln.

Snowden was directed by Orscheln to take his truck to a car wash place and get it cleaned up. He was told by Orscheln to pick up a couple of workers at the car wash place to help load his truck and drive them to the siding where the freight car, with the boxes in it, was located. He said that Manning would meet him there. Snowden did this and there he met Mr. Manning. Orscheln came down and supervised and assisted in loading Snowden's truck. Orscheln loaned Snowden twenty dollars to cover expenses on the trip and Snowden left for Marshall, Missouri, intending to follow the regular truck route. He stopped on his way to pick up his cousin to whom he had talked by phone before leaving and who accompanied him on the trip. While en route to Marshall there was an accident which caused the injury for which he makes claim for compensation.

Orscheln testified that he was interested in the good will of the Stamper Company and the Marathon Division of the American Can Company. Both of them were customers of his and had been for some time. The remaining boxes in the freight car were delivered by Orscheln's tractor-trailer later on the night of March 9.

■ Snowden filed a claim for his injuries against both Orscheln Truck Lines and Marathon Division of the American Can Company, and, as stated, the Commission found that the claimant was in the employ of Orscheln and that the work he was doing was in the course of his employment with that company. In a well stated finding of facts and well reasoned conclusion of law, the Commission held that both the dual purpose and mutual benefit doctrines were applicable to the facts. The dual purpose doctrine as explained by the Missouri Supreme Court in Corp v. Joplin Cement Company, Mo., 337 S.W.2d 252, 1. c. 255, is that if the work of the employee creates the necessity for travel he is in the course of his employment, even though at the same time he is serving some purpose of his own. The case goes on approving the doctrine as pronounced in Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181, 1. c. 183, in an opinion by Judge Cardozo and elaborates further by adopting an explanation of the doctrine by Judge Cave in

Gingell v. Walters Contracting Corporation, Mo.App., 303 S.W.2d 683, 1. c. 688.

The mutual benefit doctrine was set out by the Missouri Supreme Court in Wamhoff v. Wagner Electric Corporation, 354 Mo. 711, 190 S.W.2d 915, 1. c. 919, 161 A.L.R. 1454, wherein it was stated: "An injury suffered by an employee while performing an act for the mutual benefit of the employer and the employee is usually compensable, for when some advantage to the employer results from the employee's conduct, his act cannot be regarded as purely personal and wholly unrelated to the employment. Accordingly an injury resulting from such an act arises out of and in the course of the employment; and this rule is applicable even though the advantage to the employer is slight." See also Liverman v. Wagner, Mo.App., 384 S.W.2d 107.

In support of its contention that claimant was a loaned servant and that the Marathon Division of the American Can Company was his employer, the appellant cites us to Barsh Truck Line, Inc. v. Jerry Lipps, Inc., Mo.App., 424 S.W.2d 81; Patton v. Patton, Mo., 308 S.W.2d 739; and Ellegood v. Brashear Freight Lines, Inc., 236 Mo. App. 971, 162 S.W.2d 628. These cases all involve the leasing of a truck by a general employer and the furnishing of a driver for it and placing both under the control and direction of the lessee. We have no such situation here, nor are other cases cited by appellant analogous to the facts before us.

A most recent statement relating to the loaned servant principle is contained in Dickhaut v. Bilyeu Refrigerated Transport Corp., Mo., 441 S.W.2d 54, 1. c. 57: "* * * The governing principle of 'servant loaned or hired to another' (58 Am.Jur. "Workmen's Compensation" Sec. 343, p. 812) is summarized in this applicable language: 'When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if (a) the employee has made a contract of hire, express or implied, with the special employer; (b) the work being done is essentially that of the special employer; and (c) the special employer has the right to control the details of the work.' "

■ Upon the facts here presented, Orscheln directed the manner in which the work was to be done and the work was that of Orscheln Brothers Truck Lines, Inc. Snowden was hauling boxes that Orscheln had agreed to haul and would have hauled later if Snowden had not taken them in his truck. Applying the criteria set out in Dickhaut v. Bilyeu Refrigerated Transport Corp., supra, we are of the opinion that the Commission properly held that Snowden was not a loaned servant but was in the course of his employment with Orscheln at the time of the accident.

The same facts which refute the contention that the employee was a loaned servant support the contention that Snowden was in the employment of Orscheln Brothers Truck Lines, Inc.

■ The scope of our review is limited by the 1945 Constitution of Missouri, Art. 5, § 22, V.A.M.S. We cannot disturb the finding and the results reached by the Commission unless and only if those findings and results appear to be contrary to the overwhelming weight of the evidence. We do not so find them here.

We affirm the judgment of the circuit court affirming the award of the Commission.

BRADY, J., concurs.

DOWD, J., not participating.