Don R. COWAN, Appellant,

v.

SOUTHWESTERN BELL TELEPHONE
CO., Respondent.

No. KCD 27616.

Missouri Court of Appeals,
Kansas City District.

Oct. 6, 1975.

Motion for Rehearing and/or Transfer
Denied Nov. 3, 1975.

Application to Transfer Denied
Dec. 8, 1975.

Duncan & Russell, Robert G. Duncan, Ed-
ward A. Coulson, Gladstone, for appellant.

Robert M. Kroenert, Morrison, Hecker, Curtis, Kuder & Parrish, James E. Taylor, Fernando J. Gaitan, Jr., Kansas City, for respondent.

Before WASSERSTROM, P. J., and SHANGLER and DIXON, JJ.

WASSERSTROM, Presiding Judge.

Claimant Cowan suffered an injury on March 16, 1966, in the course of his employment with Southwestern Bell Telephone Company which is a self-insurer under the Workmen's Compensation Act. On Cowan's claim for compensation, the referee found, pursuant to a stipulation of the parties, that Cowan had suffered a permanent partial disability equal to 77½% of the body as a whole and under Section 287.190 [1] (applying the maximum allowance of HB 280, Laws of Missouri 1965, p. 415, which was in effect at the date of the accident) the referee allowed an award of $14,570 (310 weeks at $47 per week) together with $1,040 for a healing period. Up to the time of the award, the employer had paid to Cowan aggregate payments of $9,266.68, of which $1,040 was for the healing period. The referee granted to the employer as a credit against the total award the sum of $9,266.68, of which $1,040 covered the healing period and the balance of $8,226.68 applied toward the amount for permanent partial disability.

The sole issue in dispute before the referee was whether the employer is legally entitled to the $8,226.68 portion of the credit. On Cowan's application for review of the referee's determination, the Industrial Commission affirmed. Cowan then sought review in the Circuit Court, and that court affirmed the Industrial Commission. Cowan now appeals the same question here.

The payments giving rise to the credit in dispute were made under the employer's Plan for Employees' Pensions, Disability Benefits and Death Benefits. That Plan had been originally established in 1913 and

has remained in effect unchanged since 1947. The benefits are all funded by the employer itself and are entirely noncontributory on the part of the employees. However, the employer has a collective bargaining agreement with the Communication Workers of America under which it is provided that the company will not reduce or diminish the benefits under the Plan without the consent of the Union.

This Plan in pertinent parts provides for disability benefits at full pay for a limited period of time and thereafter at half pay for the remainder of disability. The Plan contains a note that: "These payments include Workmen's Compensation amounts." Paragraph 24, Section 8, of the Plan further provides that the employee or his beneficiaries "may elect to accept such benefits or to prosecute such claims at law as he or they may have against the Company. If election is made to accept the benefits, such election shall be in writing and shall release the Company from all claims and demands * * * otherwise than under these Regulations, on account of such accident." The Plan further provides in paragraph 27 that if any benefit is payable under any law of the same general character as a payment provided in the Plan, then "the excess only, if any, of the amount prescribed in the Plan above the amount of such payment prescribed by law shall be payable under the Plan * * *."

Promptly after the accident, the employer commenced payments as provided in the Plan. The check stub concerning each payment, or else an enclosure accompanying the check, bore the following notation: "Amount due you on account of accident disability for the period _____ to _____, inclusive, under the Missouri Workmen's Compensation Law, and for accident disability benefits under the Employees' Benefit Plan of this Company for the same period."

Cowan makes the following points on this appeal: 1) that no part of the payments by

1. All statutory references unless otherwise noted are to RSMo 1969.

employer under the Plan is entitled to allowance as a credit against the Workmen's Compensation permanent partial disability award; and 2) that if any credit is allowable, then no credit should have been given for payments past the time that the employee was able and willing to resume his employment.

## I.

### *The Contention for Total Disallowance of Credit*

■ The allowance of payments by an employer as a credit against the Workmen's Compensation award is governed by § 287.-160–3, which provides that "[t]he employer shall be entitled to credit for wages paid the employee after the injury, and for any sum paid to or for the employee or his dependents on account of the injury * *." This statutory provision was construed in *Strohmeyer v. Southwestern Bell Telephone Co.*, 396 S.W.2d 1, l.c. 8 (Mo.App.1965) as applied to this very same Employee Benefit Plan and it was there held that benefits paid under this Plan qualify for the statutory credit as sums paid to the employee "on account of the injury." That decision is controlling here.

Cowan seeks to distinguish *Strohmeyer* on various grounds. He argues first that the court in *Strohmeyer* emphasized that the claimant there made no attack upon the legality of the Plan, in consequence of which the court stated that "we do not rule upon the legality or enforceability of the plan or any provision thereof." Cowan states that here by way of contrast he does challenge the legality of paragraph 24 of Section 8 of the Plan, which calls upon the employee to make an election for benefits under the Plan or to prosecute a claim under the Workmen's Compensation law and if he elects to accept benefits, then he shall be required to release the company from all other claims on account of the accident. Cowan argues that this provision violates § 287.390.

Assuming that paragraph 24 of Section 8 is illegal for the reason stated, that does not touch any issue in this case. The employer does not rely here upon that provision of the Plan and makes no contention that Cowan has released or waived any rights under the Workmen's Compensation Act. To the contrary, the employer stands ready and willing to pay the award as made which is $6,343.32 in excess of what it has heretofore paid under the provisions of the Plan. All that the employer asks is that it be allowed a credit for what it has already paid, a credit which it justifies under the terms of the Workmen's Compensation Act itself, rather than any provision of the Plan. Since the employer in no way relies upon the provisions of paragraph 24 of the Plan, the legality or illegality of that provision becomes of only academic interest so far as this case is concerned.

Next, Cowan seeks to distinguish *Strohmeyer* on the ground that he has a vested right to benefits under the Plan, whereas the court in *Strohmeyer* held that the employee there had no vested right because he had elected to release the employer under paragraph 24 of Section 8 and he had not challenged the legality of that paragraph. This attempted distinction avails Cowan nothing.

It is to be noted that in *Strohmeyer* the court also held that "we need not rule whether the existence of such a vested right would prevent this credit." In an effort to develop why a "vested right" in this regard should bar credit to the employer, Cowan argues that the "vesting" accrues by reason of the provision in the collective bargaining agreement that benefits cannot be reduced except with consent of the Union, that this converts the benefits into a condition of employment, and that therefore the disability benefit under the Plan has been turned into a form of "insurance of the injured employee" within the meaning of § 287.270 which provides that "[n]o savings or insurance of the injured employee, nor any benefits derived from any other source than the employer or the employer's

insurer for liability under this chapter, shall be considered in determining the compensation due hereunder."

■ This convoluted argument is untenable. *Strohmeyer* carefully considered this very Benefit Plan in relationship to § 287.-270. The court there set forth in meticulous detail the type of benefits received by the employee from outside sources which § 287.270 intended for the employee to receive in addition to and free of any credit against Workmen's Compensation benefits. Then, having before it this very Plan, the court in *Strohmeyer* held: "[t]his section of the act was never intended to cover the situation present in the case at bar." This interpretation by *Strohmeyer* of § 287.270 was independent of any question as to whether or not the right to benefits under the Plan was a vested one. Vested or not, the disability benefits under this Plan are simply not "insurance of the injured employee" or of any other type of benefit within the intended protection of § 287.270.

Cowan also seeks to find other factual differences from *Strohmeyer* based on differences in deductions made from the benefit payments and slight differences in notations on the check stubs accompanying each payment. These minor differences are inconsequential and have no legal significance.

■ Beyond the technical analysis just made, there looms in the background the important policy consideration that employers should be encouraged to, not discouraged from, adopting or agreeing to arrangements such as the instant Plan. An excellent statement of that policy consideration appears in *Point v. Westinghouse Electric Corp.*, 382 S.W.2d 436, 441 (Mo.App. 1964):

"An employer who has paid an employee at the time of that employee's greatest need more than he was obligated to pay should not be penalized by being denied full credit for the amount paid above the requirements of the act as against the amount which might subsequently be de-termined to be due the employee. To do so would inevitably cause employers to be less generous. By limiting the payments the employer can safely make to the amount of temporary total disability the result would be that the employee would lose his full salary at the very moment he needs it most. Such a construction is neither liberal nor one made with a view to the public welfare."

## II.

### *The Contention for Partial Allowance of Credit*

As an alternative to complete disallowance of credit for payments made by the employer under the Plan, Cowan contends that the credit should be a figure less than $8,226.68. Just what Cowan believes that lesser figure should be is left in a state of confusion by his brief. At one point his brief states that the credit should be limited to a period of 85 weeks at $52 per week, thus making the credit $4,420. 85 weeks from the date of the accident would place the cutoff date under this calculation at March 18, 1968, the date when he returned to work. At another point Cowan's brief argues that the credit should extend for a maximum of 73 weeks, producing a total amount of $3,796. 73 weeks from the date of the accident would place the cutoff point at December 27, 1967, a date upon which the employer offered Cowan a job but he declined. At still another point in Cowan's brief, he argues that he was able to and should have been put back to work on August 1, 1966, and that the cutoff period ended on that date. Cowan's brief makes no effort to reconcile these varying contentions and differing computations. However, it can be assumed that he is suggesting alternative cutoff dates for the allowance, any of which would result in a credit less than the one accorded by the referee.

■ The theory underlying this point on Cowan's appeal, regardless of which cutoff date be taken into account, is that the credit allowable under § 287.160-3 cannot ex-

ceed the amount which could have been granted to the employee for temporary total disability under § 287.170. Cowan's argument necessarily proceeds on the premise that the period of temporary total disability ended on one of the alternative dates suggested by him and that the number of weeks for which a credit at $52 per week could be given also then terminated. The fatal fallacy in this argument is that the credit under § 287.160–3 is not limited to an amount equivalent to that which could have been allowed for temporary total disability. Cowan cites no authority whatsoever for that necessary premise of his argument. On the other hand, *Strohmeyer* holds directly to the contrary at 396 S.W.2d, l.c. 6. The ruling in *Strohmeyer* follows the same ruling which was made in *Point v. Westinghouse Electric Corp.*, 382 S.W.2d 436, l.c. 441 (Mo.App.1964).

Affirmed.

All concur.