Henry SHANNON, Employee,
Respondent-Appellant,

v.

ST. LOUIS BOARD OF EDUCATION,
Employer,

and

Home Indemnity Company, Insurer,
Appellants-Respondents.

Nos. 39653, 39596.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 14, 1979.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 16, 1979.

Application to Transfer Denied
April 10, 1979.

Edward M. Vokoun, Evans & Dixon, St. Louis, for employee, respondent-appellant.

Jack Randall, St. Louis, for employer.

CRIST, Judge.

A Workmen's Compensation case.

We adopt by reference the standards of judicial review as contained in *Brooks v. General Motors Assembly Division*, 527 S.W.2d 50, 52–53 (Mo.App.1975).

Employer-insurer appeals from a judgment of the circuit court affirming the finding of the Industrial Commission that employee was injured in an accident arising out of and in the course of his employment. Employee also appeals from the same judgment whereby the circuit court reversed the Industrial Commission and held that the employer is entitled to a credit for wages in the amount of $565.00.

Employee was employed by the St. Louis Board of Education in 1969 as a counselor assigned to Central High School when Dr. Richard Stumpe, President of the Harris Teachers College (hereinafter referred to as "Harris") approached him asking him to join the faculty of Harris, a unit of the St. Louis Board of Education. Harris was then attempting to upgrade the percentage of doctorate degrees at the urging of the North Central Association and to secure more funds for its operation from the legis-

lature. Pursuant to that goal employee was asked to and did sign a "Statement of Understanding" which provided in part as follows:

"STATEMENT REGARDING CONDITIONS OF EMPLOYMENT FOR HENRY SHANNON AT HARRIS TEACHERS COLLEGE FOR THE 1972–73 ACADEMIC YEAR (SEPTEMBER 4, 1972 through JUNE 8, 1973).

It is understood that this document is not a contract, but merely a 'statement of understanding' of the major conditions of my employment. . . .

It is understood that this is not a permanent appointment. The tenure is with the School System and not with Harris Teachers College. It is understood that reassignment to another position within the School System is possible. . . .

It is understood that a doctor's degree in the field of my work at Harris Teachers College will be acquired by September 1, 1977 or that my employment at Harris Teachers College will not extend beyond that date.

It is understood that this is a 'full-time' position and that the usual faculty responsibilities are applicable."

Neither Harris nor the St. Louis Board of Education specified which college he was to attend, but employee was advised that Harris already had too many PhDs from St. Louis University. He enrolled in a three hour course in counseling as a graduate student at Washington University. He worked out a schedule so that he would be able to attend classes and still work as a full time faculty member of Harris. He was not required to make up the time he spent in class. He used his own vehicle for transportation to and from classes, paid for his own tuition, and purchased his own textbooks and materials. None of these expenses was reimbursed by the St. Louis Board of Education. His hours of employment at Harris were 8:00 a. m. to 5:00 p. m. His employment at Harris was covered by Workmen's Compensation.

His progress was monitored by his employer in that the Chairman of the Counseling Department at Harris supervised him and gave him permission to tape-record sessions with students at Harris for use in his course work at Washington University.

Employee sustained injuries at approximately 2:45 p. m. on December 12, 1972. Due to icy weather, all classes at Harris had been canceled for the day. He drove from his home to the Washington University campus to attend the three hour session beginning at 3:00 p. m. and ending at 6:00 p. m. As he was leaving Umrath Hall, after looking unsuccessfully for two advisors, he slipped and fell on an ice-covered sidewalk on the Washington University campus. He had eaten, but was on his way to the cafeteria to purchase a sandwich to take to class. It was customary for the students to do so, since it was a three hour class. When he fell, he was carrying books and a ten-inch tape on counseling which he had made with a student from Harris and which he intended to use in his graduate school class. The cafeteria was in a direction opposite to that of the building in which his class was to be held.

After his injury, he continued to draw his regular pay at the rate of $45.00 per day while he was off work from December 13, 1972 to January 4, 1973. He was paid for 17 days or a total of $765.00 while performing no services for the St. Louis Board of Education at Harris. However, two weeks pay was vacation pay and amounted to the sum of $450.00. His loss of time, in part, coincided with the Harris paid vacation period.

■ Was there a work-connected injury? Was the taking of the college course at Washington University sufficiently related to his employment? Was he compelled, either directly or indirectly, to take the counseling course? Did the employer derive some benefit from his taking such course? Did the employer control or participate in the activity? The presence or absence of

any one of such factors may or may not be determinative. The significance of each factor must be considered in the totality of the circumstances presented. *See Riggen v. Paris Printing Co.*, 559 S.W.2d 625, 630 (Mo. App.1977).

■ The first question is whether employee was compelled to pursue studies to obtain his PhD degree as a condition of his continued employment with Harris. If employee was compelled to pursue studies to obtain his PhD degree, and if there was a mutual benefit, even though the greater benefit may have been to the employee, he would, nevertheless, have been engaged in an activity incident to his employment at the time of the injury. *Wamhoff v. Wagner Electric Corp.*, 190 S.W.2d 915 (Mo. banc 1945); *Lampkin v. Harzfeld's*, 407 S.W.2d 894 (Mo.1966).

The Industrial Commission could reasonably have found that employee was employed by Harris and the St. Louis Board of Education and was compelled to obtain his PhD in accordance with their understanding. There was a benefit to the employer in maintaining a quality faculty so that it would remain accredited by North Central Association. The number of PhDs on the faculty also made a good impression on the legislature insofar as funding was concerned. There was an element of control in that employer's Chairman of the Counseling Department supervised employee's progress at Washington University. Employer permitted employee to take time off from his usual hours of work to attend classes.

Employer-insurer relies on *McQuerrey v. Smith St. John Mfg. Co.*, 216 S.W.2d 534 (Mo.App.1948). In *McQuerrey*, the court did not believe that the employee's "off premises" injury occurred at a place where his employment required him to be, nor did the employer exercise any supervision or control over the employee's work. The injury occurred during nonworking hours. Most importantly, the court concluded that the employee's outside activity did not provide any benefit to the employer. *McQuerrey* is not controlling.

■ We hold that upon the whole record the Industrial Commission could reasonably have found that employee was compelled to take the counseling course and was employed by Harris and the St. Louis Board of Education at the time of the fall. We must now determine whether employee was engaged in a work-related activity at the time of his fall.

Employer-insurer relies on *Kammeyer v. Board of Education*, 393 S.W.2d 122 (Mo. App.1965) where an elementary teacher was injured on the ice when she fell outside the school premises when she was returning one evening to attend a school function. *Kammeyer* can be distinguished. Employee therein was on her way from home and had not reached the school.

Employee would normally leave Harris during his regular working hours to go to Washington University for his 3:00 o'clock class. The fact that Harris was not in session on that particular day was not the fault of employee. He had arrived at the Washington University campus. He had entered a University building to locate an advisor. He was enroute to class. He intended to pick up a sandwich as he normally did before class. He was carrying books and a Harris counseling tape. The fall occurred during regular working hours for which he was paid. Since the work of employee created a necessity for travel from Harris to class at Washington University, even though at the same time he was serving some purpose of his own, in going to the cafeteria, he was engaged in a work-related activity at the time of his fall under the "dual purpose doctrine".

■ The "dual purpose doctrine" is that if the work of an employee creates a necessity for travel, in this case from Harris to class, he is in the course of his employment while doing that work even though at the same time he is serving some purpose of

his own. *Corp. v. Joplin Cement Co.*, 337 S.W.2d 252 (Mo. banc 1960); *Snowden v. Orscheln Brothers Truck Lines, Inc.*, 446 S.W.2d 494 (Mo.App.1969); and *Begey v. Parkhill Trucking Co.*, 546 S.W.2d 529 (Mo. App.1977). Further, the trip to the University cafeteria could be reasonably anticipated as "incident" to employee's academic responsibilities which required attendance at a three hour class which extended into the dinner hour. *See Daniels v. Krey Packing Co.*, 346 S.W.2d 78, 83 (Mo.1961); *Kunce v. Junge Baking Co.*, 432 S.W.2d 602, 609 (Mo.App.1968).

We find the mutual benefit and dual purpose doctrines applicable to this case. Accordingly, we hold that employee was about his employer's business at the time of his fall and sustained an accident arising out of and in the course of his employment.

Employee contends it was error for the the circuit court to order that employer was entitled to credit for wages paid in the sum of $565.00. For the reason that $450.00 of the amount credited was for vacation pay, the circuit court's finding was contrary to § 287.160–3 RSMo.1969 which provides that an employer is entitled to credit for wages paid after the injury or in cases where the payment was made on account of the injury. Vacation pay would would not be wages paid after the injury or on account of the injury and thus may not be credited against the amount of compensation payable. *Point v. Westinghouse Electric Corp.*, 382 S.W.2d 436, 439 (Mo.App. 1964); *Cowan v. Southwestern Bell Telephone Co.*, 529 S.W.2d 485 (Mo.App.1975).

That part of the judgment of the circuit court affirming the Industrial Commission in finding that the accident arose out of and in the course of the employment is affirmed. That part of the judgment of the circuit court wherein it permitted credit to the employer in the sum of $565.00 is amended so that employer shall be entitled to a credit of $115.00.

WEIER, C. J., and DOWD, P. J., concur.