Alice Joyce HAGAN, Jeanne Beth Hagan, James Walter Hagan, dependents of Walter J. Hagan, Jr., deceased, Respondents,

v.

PARIS & OSBOURNE CHEVROLET, and Universal Underwriters Insurance Company, Appellants.

No. 45853.

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 31, 1984.

Motion For Rehearing and/or Transfer to Supreme Court Denied March 8, 1984. Application to Transfer Denied April 16, 1984.

Branham Rendlen, Hannibal, for appellants.

Marian F. Wasinger, Hannibal, for respondents.

STEPHAN, Judge.

Defendants Paris & Osborne Chevrolet and Universal Underwriters Insurance Company appeal from a circuit court judgment affirming an award of compensation by the Labor and Industrial Relations Commission to the dependents of Walter J. Hagan, Jr. We affirm.

In July 1979, Paris & Osborne Chevrolet sent an employee-salesman, Walter Hagan, Jr., from its dealership in Monroe City, Missouri, to St. Louis County to attend a General Motors training school. General Motors required dealerships to send a representative to the training session and arranged rooms at nearby motels for the trainees for the first night. The owner of the dealership by which Hagan was employed, Weldon D. Paris, directed Hagan to attend the session and, while there, to establish contacts with representatives of other dealerships to promote the possibility of trades of various models of automobiles and trucks. According to Mr. Paris, the purpose of such contacts is "so we can work out of one another's inventory." Paris also asked Hagan to investigate the availability of compact model cars at St. Louis dealerships, as he was having difficulty in meeting the demand for them in Monroe City. The training session began on Tuesday, July 17; and at the end of the first day's session, Hagan met another salesman, who was attending the session, Jerome Kriegshauser, at the motel where they were staying. They drove to a Chinese restaurant to eat dinner and decided to take a drive after dinner. Kriegshauser testified that, during the drive, Hagan expressed an interest in seeing the Gateway Arch. He further testified that they discussed their mutual interest in evaluating the stock of automobiles held by St. Louis dealerships with the intent of purchasing vehicles of which their respective employers were in need. Kriegshauser had also

been instructed by his employer to investigate the compact car market in St. Louis; Hagan was interested in locating particular trucks for which he had several buyers and, as mentioned above, was interested in compact automobiles. The pair decided to drive to several dealerships, toward the downtown area, to pursue this investigation.

While they were stopped at an intersection, two men displaying guns jumped into the back seat of their automobile and instructed Kriegshauser, who was driving, to proceed to an area several blocks away. The men then robbed Kriegshauser and Hagan, and in the course of the robbery began shooting, killing Hagan and wounding Kriegshauser.

The Missouri Labor and Industrial Relations Commission found that the assault on Mr. Hagan occurred in the course of his employment. It awarded his spouse $65.00 per week and his two dependent children $25.00 per week for an indeterminate number of weeks, and additionally awarded $2000.00 for burial expenses, all as contemplated by § 287.240, RSMo 1978. The deceased's employer and its insurer appeal.

The determinative issue on appeal is whether Hagan's death, a compensable type of accident under § 287.120–1, RSMo 1978, arose out of and in the course of his employment. We begin our analysis with an acknowledgment of our standard of review of a workers' compensation claim: It is a review of "the whole record in the light most favorable to the decision, deferring to the Industrial Commission when it resolves issues concerning the credibility and weight to be given to conflicting evidence and to affirm when the decision is supported by competent and substantial evidence." *Gold v. Sharp, Kidde, Webb,* 564 S.W.2d 612, 614–615 (Mo.App.1978). It is the sufficiency of the evidence which defendants argue is lacking, particularly in light of various accounts given by the deceased's companion, Jerome Kriegshauser, as to the purpose of his trip with the de-

ceased on the evening that they were accosted.

In interviews by a homicide detective while Kriegshauser was hospitalized and by an insurance company representative on the telephone, Kriegshauser responded that he and Hagan had taken a trip to see the sights and to relax before heading back to their motel for the night. In a personal interview with another insurance company representative, Kriegshauser signed a statement that, although he and Hagan wanted to leave their hot motel rooms for awhile, they went out to talk and learn the location of certain trucks Hagan had buyers for but did not have the trucks in stock. At the hearing before the Commission, Kriegshauser reiterated that he and Hagan discussed looking for trucks, and he added that he, Kriegshauser, had been instructed to look at anything in a compact automobile that he might be able to buy from another dealer. He testified that Hagan also was looking for new compact automobiles for Hagan's employer.

█ Any inconsistency perceived in Kriegshauser's prior statements to third parties could affect his credibility, *Davies v. Carter Carburetor, Division of ACF Industries, Incorporated,* 429 S.W.2d 738, 752 (Mo.1968), but the weight to be accorded to any such inconsistency is for the Commission, not a reviewing court. *Ferguson v. Hood,* 541 S.W.2d 19, 22 (Mo.App. 1976). Our review is limited to deciding if the Commission could have reasonably concluded that the two men were looking ·at dealerships' stock during that evening. *McCue v. Studebaker Automotive Sales, Inc.,* 389 S.W.2d 408, 411–412 (Mo.App. 1965). We determine that it could have so · concluded and focus our concern on a more pivotal point, i.e. whether the death of Hagan arose out of and in the course of his employment. More specifically, we must resolve whether the deceased's conduct that evening, looking at inventory of dealerships and doing some sightseeing, comes within the "dual purpose doctrine."

The case of *Shannon v. St. Louis Board of Education,* 577 S.W.2d 949 (Mo.App.

1979) is analogous. In that case, an employee of the St. Louis Board of Education was offered a position at Harris Teachers College, a unit of the Board, with the understanding that he would seek and obtain a doctoral degree within five years. The employer Board saw this as a benefit to it in keeping the college's accreditation and in making a good impression on the legislature with respect to funding. The employee was free to select the institution where he would seek the degree. Accordingly, he enrolled in a graduate course at Washington University which required his attendance partly on time when he was being paid by the Board and partly on his "own" time. He paid his tuition, books and materials and traveled to class in his own car. One day shortly before class was to convene, he was injured when he slipped and fell on an ice-covered sidewalk on the campus. At the moment that the fall occurred he was not heading toward the classroom, but toward a cafeteria to purchase a sandwich to take to class. This was customary, as the class was a three hour session which lasted into the dinner hour. His award of Workers' Compensation benefits by the Industrial Commission was affirmed by this court.

█ Observing first that the employee's attendance at the class constituted a benefit to the employer (albeit, possibly a greater benefit to the employee), the court held that the Commission correctly found that the injury occurred while the employee was "engaged in an activity incident to his employment." *Id.,* 952. The court then discussed the "dual purpose doctrine," saying, "that if the work of an employee creates a necessity for travel, in this case from Harris to class, he is in the course of that employment while doing that work even though at the same time he is serving some purpose of his own." *Id.,* 952–953. Thus, the court held that the injury arose out of and in the course of employment. So it is here.

█ Regardless of whether Hagan embarked on the after dinner excursion with a purpose of seeing the Gateway Arch, there

**4** ■

was more than adequate evidence from which the Commission could and did find that it was also his purpose to observe St. Louis auto dealerships for the benefit of his employer. That he selected the dealerships to canvas is of no more significance than the employee's selection of which university he would attend in *Shannon*, supra.

We do not treat each of appellants' ten points on appeal separately for they are largely variations on the same theme, i.e. that the Commission should not have found from the evidence that Mr. Hagan's injury and death arose out of and in the course of his employment. The issue in a case such as this, however, is not whether the trier of fact could have found differently, but whether there was sufficient competent evidence to support the facts found and whether those facts support the award. § 287.490, RSMo 1978. We hold that both tests have been met in this case.

Affirmed.

SIMON, P.J., and SATZ, J., concur.