No. 84-186

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

BYRON J. COURSER,

        Claimant and Respondent,

  -vs-

DARBY SCHOOL DISTRICT #1,

        Employer,

  and

INTERMOUNTAIN INSURANCE COMPANY,

        Defendant and Appellant.

APPEAL FROM:  Workers' Compensation Court, The Honorable Timothy
             Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Garlington, Lohn & Robinson; Larry Riley argued,
        Missoula, Montana

    For Respondent:

        Robinson, Doyle & Bell; George H. Corn argued,
        Hamilton, Montana

Submitted:  November 14, 1984

Decided:  December 7, 1984

Filed:  DEC - 7 1984

*Ethel M. Harrison*
_____
Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the opinion the Court.

Claimant, Byron J. Courser, filed a petition to recover compensation benefits for a severe head injury. Workers' Compensation Court ruled the injuries were compensable. Defendant appeals.

Byron Courser, Claimant, has been an elementary school teacher in the Darby School District No. 9 since 1970. His responsibilities included teaching, coaching, art instruction, and administrative duties.

During the spring of 1981, Claimant entered an individual employment contract with the District that provided for an "annual salary" to be paid in ten or twelve monthly installments according to the employee's preference. By its terms, this contract was subject to a master contract negotiated between the Claimant's union and the School District. The salary schedule encouraged teachers to pursue graduate degrees since promotion was based on advanced education as well as tenure. Prior approval by the school administration of all proposed graduate programs was required.

Speculating early retirement of the principal, School District officials urged Courser to complete a master's degree to become eligible for that administrative opening. In the summer of 1980 claimant entered a master's program at Western Montana College based upon encouragement from the District's superintendent and the principal of the elementary school. Pursuant to the approval requirement of the master contract, the District superintendent reviewed and approved claimant's degree program and selected courses. Concurrently, the superintendent granted a salary increase to become

effective upon completion of the 1981 summer courses, even though the master's program remained incomplete.

Claimant's wife testified that he had worked for the Forest Service for the past fourteen summers and would have returned to this summertime work if his School District superiors had not strongly recommended that he complete his master's degree.

Claimant started the academic summer session in June 1981. He lived in the dorms on the Western Montana College campus in Dillon, Montana, and commuted home to his wife and two children every weekend. On Sunday evening, June 26, 1981, returning to Dillon on his motorcycle, Claimant sustained a severe closed head injury in a single vehicle accident. The left temporal lobe of his brain was severely damaged resulting in no short-term memory greater than thirty seconds. Claimant's injury resulted in his permanent placement in Warm Springs State Hospital. Defendant agreed at the pretrial that claimant's injuries rendered him permanently and totally disabled but denied the injury was work-related and denied coverage.

Claimant filed a petition in the Workers' Compensation Court. By agreement of the parties the case was submitted upon briefs, depositions and exhibits.

On March 26, 1984, Judge Reardon entered his Findings of Facts and Conclusions of Law and Judgment ruling that claimant's injury was work-related and compensable. Claimant was awarded attorney's fees and costs, but denied an increased award due to defendant's wrongful denial.

The single issue presented on appeal is whether claimant's motorcycle accident in which the head injury occurred was sustained while he was in the scope and course of his employment for Darby School District No. 9.

3

Determination of compensability of Courser's injuries focuses on a single dispositive question: whether or not Courser's summer school graduate program at Montana Western College in Dillon is a work-related activity. It is undisputed that Courser was injured while driving to his master's degree courses in Dillon. If this Court decides that there is substantial evidence for the graduate program to be related to Courser's teaching and administrative responsibilities in the Darby school, his resultant injuries are compensable.

This Court adheres to the "going and coming" rule as a well-established principle in Workers' Compensation law which denies compensation benefits for injuries sustained by an employee traveling to or from the regular work place. Hagerman v. Galen State Hospital (1977), 174 Mont. 249, 251, 570 P.2d 893, 894. Under one of the recognized exceptions to the "going and coming" rule, Workers' Compensation law recognizes compensation benefits for injuries sustained during travel necessitated by performance of a special assignment which is incidental to the employee's regular employment. Steffes v. 93 Leasing Co. (1978), 177 Mont. 83, 580 P.2d 450. Here the claimant was returning to Dillon and the injuries were incurred within the course and scope of employment if the schooling in Dillon was job related.

The standard of review of Workers' Compensation cases is whether substantial, credible evidence supports the Workers' Compenstion Court decision. Green v. C.R. Anthony & Co. (Mont. 1981), 634 P.2d 629, 630. The spirit of Workers' Compensation legislation to compensate the injured worker, requires that we review the facts in the light most favorable to the claimant.

Controlling factors repeatedly relied upon to determine a work-related injury include: (1) whether the activity was

4

undertaken at the employer's request; (2) whether employer, either directly or indirectly, compelled employee's attendance at the activity; (3) whether the employer controlled or participated in the activity; and (4) whether both employer and employee mutually benefited from the activity. The presence or absence of each factor, may or may not be determinative and the significance of each factor must be considered in the totality of all attendant circumstances. Shannon v. St. Louis Board of Education (1979), 577 S.W.2d 949, 951-2.

It is clear from the record that Courser was encouraged to pursue the master's degree program. His superintendent and principal strongly urged him to take the graduate courses to assure his eligibility for a principal position at the Darby school.

The Arizona Court of Appeals found injuries sustained while returning home from a training seminar compensable, focusing on the employer's authorization and encouragement to attend the course and held:

> "From the record it is clear that the respondents were at least strongly urged to attend the seminar. We hold that considering the evidence in its totality, there is sufficient indicia of employment-related activity to support the finding that the respondents sustained their injuries while in the course of their employment." Johnson Stewart Mining Co. v. Industrial Co. (1982), 133 Ariz. 424, 652 P.2d 163, 167-68.

The mutual benefit element is sufficiently supported in the record. Courser was to receive a salary increase for his completion of the summer graduate courses. The School District, Courser's employer, received the benefit of maintaining a highly-qualified teaching faculty and of grooming someone for one of the District's administrative positions.

The element of control of employer over the employee's activities is elusive and more problematic to ascertain. In

5

Bump v. N.Y.S. ~~Craig~~ School Central District (1973), 338 N.Y.Supp.2d 998, the New York Supreme Court found the control factor was satisfied by the mere approval of the teacher's courses by the supervisor:

> "[1,2] Attendance at the particular place and incidental travel do not remove an employee from the employment even if voluntary, if such attendance was incidental to the ordinary employment and was undertaken at the employer's request (Matter of Grieb v. Hammerle, 222 N.Y. 382, 118 N.E. 805). Upon the testimony recited by the board in its decision there can be no doubt that the particular course at Briarcliff was reasonably incidental to the particular employment of this Social Studies teacher; that attendance at Briarcliff was advantageous to the employer; <u>and that both superiors of the decedent had specifically approved the decedent's course at Briarcliff</u>. Under such circumstances, the voluntariness of attendance would not be substantial evidence to support a conclusion that the decedent was not in the course of his employment while attending Briarcliff." 338 N.Y.Supp.2nd at 1000. (Emphasis added.)

In a more recent decision issued by the Missouri Court of Appeals, the court satisfied the element of control with even a lower standard of proof and held:

> "There was an element of control in that employer's Chairman of the Counseling Department supervised employee's progress at Washington University." Shannon, 577 S.W.2d at 952.

The most convincing authority addressing the employer's control of employee's activities as determinative for compensation was set out in an Arizona Court of Appeals decision.

> "We do not think compensability may rest solely upon the fact that an employer, who does not sponsor, approve or urge employee participation in an activity, merely receives some benefit from the activity. As stated in Tally v. J.J. Newberry Company, 30 A.D.2d 898, 899, 291 N.Y.S.2d 950, 952 (1968):

> "'There must be at least some action on the part of the employer to connect the trip to employment, some sponsorship, some approval, some employer action must be present.'" Johnson Stewart Mining Co., 652 P.2d at 167.

Pursuant to a provision in his master employment contract, mandating prior approval of graduate degree programs

6

by the School District, Courser's proposed master's degree curriculum was reviewed and approved by his superintendent. Absent this employer's authorization, Courser's summer school would not have qualified him as an eligible candidate for promotion.

The trial court did not specifically address the issue of control. However, in this case there is sufficient evidence on control to lend support to a finding that the Dillon school activity was related to the claimant's employment.

Actual control is not necessary for compensability. The right to control is sufficient. Barbree v. Shelby Mutual Ins. Co. (1962), 105 Ga.App. 186, 123 S.E.2d 905. That right may exist if the employee is acting for the benefit of the employer. Here we have an employer who in fact controlled curriculum choice. Additionally, employer could be determined to have the right of control growing out of performance of activity by claimant designed to benefit employer. Specific contractually granted control is not indispensable where the right to control can be inferred from other facts.

There is substantial, credible evidence to support the Workers' Compensation Court. We therefore affirm.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

7

_____

_____
Justices

Justice Daniel J. Shea specially concurring:

I agree with the majority opinion but simply emphasize that in the circumstances of this case, the control issue is not that important. I am not sure, as the majority opinion states, that there existed an actual right to control on the part of the Darby School District. However, I do not believe that in cases of this nature, the control or right to control is _not_ that important. Here the overriding issue is the direct benefit to the school district, the encouragement by the school district that Courser get his advanced degree, and the fact that in going to summer school Courser gave up his regular summer employment with the Forest Service, certainly a great sacrifice to himself and his family.

Daniel J. Shea
Justice

8

Mr. Justice L. C. Gulbrandson, dissenting.

I respectfully dissent.

The claimant resided in the City of Hamilton, Montana, and, during the period of his employment contract, taught fourth grade at Darby, approximately fourteen miles south of Hamilton. It is certain that if the claimant's injury had occurred while traveling from his residence to the Darby school, he would not be eligible for workers' compensation benefits. On the date of his injury, the claimant had left his home at Hamilton at approximately 6:00 p.m. and proceeded by highway south through Darby and towards Western Montana College at Dillon, approximately 163 miles from Hamilton.

The record is clear the contract school year had ended, and that the claimant had no further obligations to the school district, except to report for teaching duties the following September. The claimant, during previous summer sessions, had completed sufficient credits to assure his accreditation for the coming years. The record further discloses that he was an excellent teacher, related well with his students, and was respected by parents of students, fellow teachers, and school administrators. Both the principal and Superintendent testified that they encouraged the claimant to proceed with his Masters of Arts program as they both felt that he would be an excellent candidate for the position of principal, if that position were to be open and if he had completed his Master's program. The workers' compensation judge found that claimant was not guaranteed the position if it were available, and the testimony was that the position was not open two years after the accident, and that the last time a principal's position had been open, more than forty applications were received.

The master contract provided that any teacher could move one space across the salary schedule by completing fifteen credits prior to the start of the next contract year and the Superintendent testified that the claimant would have had a salary increase had he completed fifteen credits during the summer of 1981. I believe the majority to be in error when they state the Superintendent granted a salary increase concurrently with the approval of the claimant's degree program. Plaintiff's deposition Exhibit No. 3 lists the fifth year program of courses developed by Western Montana College and the claimant, and was signed by the Superintendent as follows:

Program for M.A.
Okayed for salary schedule advancement
(to be completed SS/82)
                                LWB 9/18/80

The Superintendent's testimony regarding that approval, when questioned by appellant's counsel, was as follows:

"Q Now, is the course of study that he was going to pursue, is there any requirement that the School Board or trustees approve his course of study?

"A No.

"Q Just you?

"A In the case of a Master's program, even I have very little say over it because the college sets that out."

Upon re-direct questioning by respondent's counsel, the Superintendent continued as follows:

"Q Now, Mr. Riley discussed with you on Claimant's Exhibit No. 3 this 'Program for M.A. okayed for salary schedule advancement.' Those are your words that I am reading, and those are your initials under that. Can you hypothesize that you had a conversation with Mr. Courser in the fall of '80? This was signed by you on 9-18-80 concerning the M.A.?

"A Yes.

10

"Q Do you suspect that you discussed the program with him at that time?

"A Yes.

"Q Would this, in essence, be your approval of that program?

"A I would say it's an approval of a Master's program, and the courses listed up there are not necessarily part of that program.

"Q Would you look at the courses under the ones that are part of the -- Done by the printer that start at the top 'E.D.' to '525' down there, Philosophy of Education, School Guidance and Advanced Educational Psychology. Do you know why those courses are printed the way they are?

"A Those are part of a Master's program in education.

"Q When you say 'part', what do you mean by that?

"A Well, they are -- I assume that Western Montana College, if you are getting a Master's program in education or Master's degree, those would be some courses you would be required to take of that program.

"Q I am going to refer you now back to the Master Contract. In your opinion, under the terms of this contract, do you have to approve of a Master's program?

"A Approve of the program, no. Be notified that you are going on the program, yes, or notify the school district that you are going on.

"Q But you don't have to approve the program --

"A No.

"Q -- in other words, do you?

"A No, the colleges have a program in the different Master's degree areas. In other words, it would do me no good to write a program. The college may not accept it. They write the program, and--

"Q I guess my question is: If somebody was going to take a program that you didn't feel you needed at the school, would you give them a salary advancement for something like that?

11

"A   I would say that if it was something way out, that I could object to a salary advancement, yes.  And I don't know if -- I can think of an example.  If someone was taking a Master's program in geology and they were an art teacher, I might question that."

In explaining his conclusions of law, the workers court judge stated:

"In nearly every case discovered the following criteria were considered.

"1.  Was there a benefit to be gained by the employer?

"2.  Did the employer pay any of the expenses associated with the activity?

"3. Did the employer require the training and/or prescribe the method of training as a condition of employment?

"4.  Did the employer encourage, offer, sponsor or acquiesce, or expect the employee's participation in the training?

"5.  Was the training activity taking place on property under the control of the employer.

"In the instant case the following factors appear;

"1.  The employer stood to benefit by having a more highly trained teacher and a prospective candidate for a principalship.  To be sure the claimant stood to gain by improving his academic record thereby increasing his salary by the terms of the contract and presumably being better qualified to seek other positions, either locally or elsewhere.

"2. The employer did not pay any of the costs associated with the training program.  (Citations omitted.)

"3. The employer did not prescribe the educational program but in the testimony of the superintendent, the employer did approve the training thereby indicating to the claimant that the program was acceptable and upon completion would warrant a salary increase per the contract.  This stood to benefit the employer by allowing the employer to, at least indirectly, specify the course of study by limiting a teacher's capacity to be eligible for the salary increase contained in the contract only if the

12

prospective course of study would benefit the school.

"4. The _employer, through its agents did encourage the claimant to attend the program_. While it may be accurate to say that the encouragement was more in the nature of a friend urging one to improve his station in life, nonetheless the _superintendent told claimant that he thought he would be a good candidate for the upcoming principal position and he needed training to be even eligible_. Certainly there was no guarantee that claimant would have gotten the position because it would be open to all applicants, _the claimant nonetheless could reasonably have expected the superintendent to be a supporter of his application_ based on the encouragement to seek the advanced training.

"5. The training was in no way under the control of the employer. It was not on the employer's premises, and the vehicle was not in any way related to the employer.

"It would appear unreasonable to require that all five conditions be met in order to establish compensability. Each case must rise or fall on its own set of facts.

"In the case at bar, this Court concludes that there is a sufficient nexus between the claimant's graduate studies and his employment to warrant compensation. Simply stated the employer urged the schooling, approved the plan, and stood to benefit by having a more highly trained faculty member. Had the employer remained neutral and merely notified the claimant that the decision to seek further training was his alone to make but that without such training he could not be considered for advancement a different result might occur. _Here the employer actively encouraged the graduate training and approved the courses_. Under the liberal construction mandates of §39-71-104 MCA the claimant is entitled to benefits. (Emphasis in original.)

I disagree with the comment No. 3 set forth above, and I do so under the commonly understood rule of law that where a case is submitted upon briefs, depositions, and exhibits only, as in the present case, this Court is in the same position as the trial judge in reviewing the facts. See

13

McCracken v. Liquor Control Board (1943), 115 Mont. 347, 143 P.2d 891 and Morgan v. Butte Cental Mining Co. (1920), 58 Mont. 633, 194 P. 496.

Regarding comment No. 3, it is my view that said comment does not fully respond to criteria question No. 3. There is no comment regarding the training being a condition of employment. The record here is clear that the claimant's activities regarding a master's degree program were not a condition of employment.

I would hold that the degree of control exhibited here by approval of the education plan was illusory at best, and that the benefit to the employer was indirect and could occur only in the speculative future, and was not a part of the contract of employment and that, therefore, claimant's injury was not compensable.

I do agree with the following comments by the workers' compensation judge:

> "The instant case presents a case of first impression in Montana. In resolving the issue this Court looks first to the statute, to Montana case law and finally to other jurisdictions for guidance.
>
> "Clearly, the potential impact of the instant case is enormous. Many individuals, already employed, seek additional training in an effort to upgrade their skills, and to improve their employment status by becoming better trained and thereby eligible for higher paying positions. This may be particularly so in the educational field. The present case demonstrates that teachers who are educated beyond a four year bachelor degree are eligible for a higher salary. Obviously it is a personal benefit to increase one's income. Simultaneously, it can be inferred that a teachers personal enhancement of skills through graduate training will be an asset to the employer by becoming a more knowledgeable educator." (Emphasis added.)

14

The workers' compensation judge clearly recognized the possible impact of his decision, after affirmance by this Court, upon every school district in Montana and upon employers in general. He did not allude to the "special errand" exception to the "going and coming" rule in his findings, conclusions, or judgment, but the majority has now expanded the exception to cover a summertime of travel activities. The claimant's teachers at Western Montana College would not receive compensation for injuries sustained while traveling to the college, even though they were under a contract of employment with the college, but the majority has now extended compensation benefits to a student, without an employment contract, traveling to that same college.

It is my view that each case cited by the majority and the workers' compensation court judge as supporting compensability is readily distinguishable from the present case either on the basis of salary payments, direct benefits to the employer, or compulsion to attend training programs as a condition of employment.

I would reverse.

_L. C. Gulbrandson_
Justice

I join in the dissent of Mr. Justice L. C. Gulbrandson.

_John Conway Harrison_
Justice