632 F.Supp. 772 (1984)
Michael C. WILKEN, et al., Plaintiffs,
v.
AT & T TECHNOLOGIES, INC., et al., Defendants.
No. 83-2198C(3).
United States District Court, E.D. Missouri, E.D.
December 5, 1984.
Memorandum on Damages April 5, 1985.
Sheldon Weinhaus, Levin & Weinhaus, St. Louis, Mo., for plaintiffs.
Richard Ahrens, Daniel Sullivan, Lewis & Rice, St. Louis, Mo., for defendants.

MEMORANDUM
HUNGATE, District Judge.
This matter is before the Court on the parties' cross-motions for summary judgment. *773 The parties have agreed to forego trial and submit their case on the record.
Plaintiff Wilken represents a class consisting of Missouri employees of AT & T Technologies, Inc. (hereafter AT & T) whose workers' compensation claims for residual injury were offset by payments from the AT & T Technologies' Sickness and Accident Disability Benefit Plan (hereafter Plan) which were made for work absences resulting from temporary total disability.
The material facts are not in dispute. Plaintiffs, as well as all other participants in the Plan, are entitled to receive payments for temporary total disability to work due to injury arising out of and in the course of employment by AT & T. See Plan § 5.2. The extent of the benefit varies in accordance with the employee's length of service; an employee is paid full wages for a certain period of time and then half wages for so long as the employee remains disabled.
Provision for temporary total disability payments to an employee is also made under the Missouri Workers' Compensation Law (hereafter Workers' Comp), Mo.Rev. Stat. § 287.190, which requires weekly payments in amounts set forth by statute for a healing period not to exceed fifty-two weeks. Typically, this amount would be less than the amount payable under the Plan.
In addition to providing for temporary total disability payments, Workers' Comp also mandates payment of a sum to compensate for any permanent partial disability which results from the injury. Mo.Rev. Stat. § 287.200. This required payment, under a no-longer existing Workers' Comp law, could be integrated with Plan payments for temporary total disability; i.e., an employer could credit against the Workers' Comp amount awarded "wages paid to the employee after the injury, and ... any sum paid to or for the employee or his dependents on account of the injury...." See Mo.Rev.Stat. § 287.160, subd. 3 (1978). This provision was interpreted by Missouri courts to allow an employer to claim as credit against awards for permanent partial disability those amounts paid through employee benefit plans that were in excess of the healing period payments required by Workers' Comp law. See Cowan v. Southwestern Bell Telephone Co., 529 S.W.2d 485 (Mo.App.1975).
Prior to the time period in question, it was undisputedly AT & T's practice not to offset required Workers' Comp payments. Beginning in 1975 in Missouri, and in contravention of formal national practice, AT & T began taking the offset provided for by Missouri state law.[1] In 1977, the question whether to change the formal national practice was considered by the Plan's benefit committee. Insofar as the offsetting was permitted by law in only a few states, the committee decided not to alter national policy. Nonetheless, the offsetting continued in Missouri until June 1, 1983, at which time AT & T declared its intent to discontinue the offsetting practice. Named plaintiff Michael Wilken was subjected to the offset in October of 1981, when he settled a potential Workers' Comp claim for an amount equal to the amount provided for by Workers' Comp law for his injury, less the excess temporary total disability paid under the Plan.
Plaintiffs assert that the offsetting practiced by defendants in Missouri was unlawful, and they accordingly seek relief as well as attorneys' fees and costs. Based on the facts outlined above, the Court finds that summary judgment should be entered in plaintiffs' favor, but declines to provide plaintiffs with the full extent of equitable relief sought.
Defendants correctly note that the integration of Plan payments with those made under state law is permissible under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, et seq. In Alessi *774 v. Raybestos-Manhattan, Inc., 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), the Supreme Court held that pension plan provisions for offsets based on workers' compensation awards do not contravene ERISA's nonforfeiture provisions. Thus, defendants' practice of offsetting was only unlawful if not provided for in the Plan.
The Plan provided for integration as follows:
In case any benefit, which the committee shall determine to be of the same general character as a payment provided by the plan, shall be payable under any law now in force or hereafter enacted, to any employee of the company, the excess only, if any, of the amount prescribed in the plan above the amount of such payment prescribed by law shall be payable under the plan....
Defendants argue that in light of the fact that the Plan committee passed a resolution in December of 1981, holding that Plan payments were of the same general character as awards of the Workmen's Compensation Appeals Board for permanent and/or temporary disability indemnity, defendants' offset practice was clearly lawful. However, this Court must make a limited inquiry into the propriety of the committee's interpretive resolution, since "[a] reviewing court will intervene in the administration of a pension plan ... where the trustees' action is arbitrary, capricious, or an abuse of discretion." Morgan v. Mullins, 643 F.2d 1320, 1321 (8th Cir.1981). Trustees act arbitrarily when they impose a standard not required by the pension plan itself. Id., quoting Maness v. Williams, 513 F.2d 1264, 1267 (8th Cir.1975).
In this case, defendants acknowledge that the practice of offsetting was an exception to the general practice, and indeed the formal national policy, of not taking the credit asserted in Missouri cases. Clearly, then, the practice was not required by the pension plan itself. The fact that the practice may have seemed more equitable as to AT & T is irrelevant, since fiduciaries of such ERISA plans "are to guard the interests of the participants and beneficiaries, not those of the employer." Calhoun v. Falstaff Brewing Corp., 478 F.Supp. 357 (E.D.Mo.1979). 29 U.S.C. § 1104(a)(1) specifically states that:
... a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and  (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan....
Nor are defendants saved by the fact that the offset practice complained of was specifically authorized by Missouri law. In Alessi, supra, the Supreme Court held that a similar state law be preempted by ERISA.
The instant situation is akin to that addressed by Honorable John F. Nangle in Dependahl v. Falstaff Brewing Corp., 491 F.Supp. 1188, 1197 (E.D.Mo.1980), aff'd in part and rev'd in part, 653 F.2d 1208 (8th Cir.), cert. denied, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384, wherein defendant Falstaff's severance policy was changed in response to anticipation of mass discharges. The Court held:
Such a change in the Policy is a clear violation of Falstaff's responsibility to discharge its duty as fiduciary in the sole interest of beneficiaries and for the exclusive purpose of providing benefits to beneficiaries and defraying reasonable expenses. 29 U.S.C. § 1104(a)(1); 478 F.Supp. at 360-361. Falstaff's alteration of the Policy was for Falstaff's benefit alone. Such a change will not be permitted to divest plaintiff Calhoun of his otherwise entitled benefits.
Accordingly, this Court finds that the Plan does not provide for integration of Workers' Comp benefits, and that class members are entitled to receive payment otherwise due them for permanent partial disability were it not for the offset. Defendants argue that plaintiff Wilken is not otherwise entitled to receive payment by virtue of his having settled his claim. The Court need not address that question in resolving the parties' cross-motions for *775 summary judgment. The amounts, if any, owed to individual plaintiffs, including named plaintiff Wilken, can be determined at a hearing to be held at a later date. At that time, the Court will also receive evidence as to reasonable attorneys' fees.
Plaintiffs seek several forms of equitable relief in addition to a declaration that the Plan does not allow the aforementioned integration. The Court believes that the additional relief sought is not appropriate. The relief granted will fully protect the plaintiffs' interests; injunctive relief is not necessary.

ORDER
A memorandum dated this day is hereby incorporated into and made a part of this order.
IT IS HEREBY ORDERED that defendants' motion for summary judgment be and the same is denied.
IT IS HEREBY FURTHER ORDERED that plaintiffs' motion for summary judgment be and the same is granted.
IT IS HEREBY FURTHER ORDERED that plaintiffs' request for reasonable attorneys' fees and costs be and the same is granted.
IT IS HEREBY FURTHER ORDERED that a hearing will be held on Thursday, January 24, 1985, at 9:30 a.m., in order to determine the amounts owed to plaintiffs and reasonable attorneys' fees.

MEMORANDUM ON DAMAGES
On December 5, 1984, the Court granted plaintiffs' motion for summary judgment on liability in this class action brought under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, et seq. The Court sustained plaintiffs' contention that the AT & T Technologies' Sickness and Accident Disability Benefit Plan (the Plan) did not provide for the offsetting of certain required workers compensation payments by Plan payments for temporary total disability. A hearing on the issue of damages and attorneys' fees was held on January 24, 1985.

Findings of Fact
1. Plaintiff class consists of 105 members against whose workers compensation awards for permanent partial disability defendant employer offset Plan payments for temporary total disability. Some of the plaintiffs had more than one workers compensation claim. (Plaintiffs' Ex. 105.)
2. Of plaintiffs' workers compensation claims, three were determined by an administrative law judge after a hearing. The remainder were settled either prior to the formal filing of a claim by "conference rating," or thereafter by "compromise settlement."
3. As to the claims settled by conference rating, Keith Matchell, an AT & T associate in benefits service, testified of the procedures followed. He testified that he explained to employees such rights as to get another physician and to file a claim. His advice was duplicated by a state legal advisor.
Additionally, Matchell testified that he reviewed the offset being asserted by AT & T and assured that the employee did not disagree with the amounts involved. He did not recall ever being questioned about the company's right to assert such a credit. Typically, claimants were not represented by counsel at this stage.
4. Richard Rousselot, the Director of the Division of Workers Compensation, testified regarding procedures followed at a compromise settlement hearing, at which claimants were typically represented by counsel.
Rousselot stated that the administrative law judge would ask whether any credit was claimed, and explain the credit to the claimant, if applicable. Rousselot testified that the credit was never challenged.
5. At these hearings, the following questions were typically asked, and answered in the affirmative (Defendants' Exs. E and F):
Q: Do you understand that by agreeing to this settlement you are forever closing out this claim under the Missouri Workmen's *776 Compensation law? (emphasis added.)
Q: Do you understand that you will receive no further compensation or medical aid by reason of this injury?
Q: Do you understand that you have the right to a hearing of your claim and that as a result of such hearing you might receive more money or less money than is provided you by this settlement?
6. At these hearings, claimants were never advised or counselled with respect to any rights they might have had under ERISA, nor was ERISA or the Plan discussed.
7. Defendants have not disputed the accuracy of Plaintiffs' Exhibit 105, which lists the credits asserted against each claim along with the amount of prejudgment interest sought as to each claim.

Conclusions of Law
1. The Court finds that defendants have failed to establish any compromise or settlement of their claims in this case. Contrary to defendants' assertion in their proposed findings of fact and conclusions of law, this is not an action to recover workers compensation benefits but to recover Plan payments under ERISA. The fact that settlements were entered into regarding workers compensation claims does not preclude the ERISA relief sought herein. Thus, plaintiffs are entitled to recover the amounts previously withheld as shown in Plaintiffs' Exhibit 105.
2. Plaintiffs are entitled to prejudgment interest on the amounts owed to them, under Dependahl v. Falstaff Brewing Co., 653 F.2d 1208, 1218-20 (8th Cir.), cert. denied, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981). As per Plaintiffs' Exhibit 105, plaintiffs are entitled to a rate of six percent per annum through September 27, 1979, for those payments withheld prior to that date, and nine percent per annum thereafter as payments were withheld. This amounts to prejudgment interest of $49,104.58 on the principal amount of $104,483.43.

JUDGMENT
Findings of fact and conclusions of law, dated this day, are hereby incorporated into and made a part of this judgment.
IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that judgment be and the same is entered in favor of plaintiffs, a class consisting of Missouri employees of AT & T Technologies, Inc. (previously known as Western Electric Co., Inc.), who, from January 29, 1972, to the present, have or have had workers compensation claims for residual injury, which entitle the worker to the recovery under Missouri state law and who did not receive the full recovery allowed by state law because of defendants' offset of benefit plan payments for absences against the worker's compensation claim for injury, and against defendants in the amount of $104,483.43, along with prejudgment interest of $49,104.58, postjudgment interest at the rate of 10.08% per annum, and reasonable attorney's fees and costs to be assessed.
IT IS HEREBY FURTHER ORDERED that defendant shall tender the judgment money to the Clerk of the Court, subject to distribution by further Court order.
NOTES
[1] There is evidence that the offset practice came into effect in a small number of other states as well.