Melvin J. SPRUNG, Jr.,
Respondent/Cross–Appellant,

v.

INTERIOR CONSTRUCTION
SERVICE, Employer,

and

Pacific Indemnity Company, Insurer.

No. 53429.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 19, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 20, 1988.

Application to Transfer Denied
July 26, 1988.

James P. Leonard, Padberg, McSweeney, Slater & Merz, St. Louis, for Sprung, Jr.

Robert W. Haeckel, Evans & Dixon, St. Louis, for Interior Construction Service.

GRIMM, Judge.

This worker's compensation appeal was brought by both the employee, Melvin J. Sprung, and the employer, Interior Construction Service. Sprung appeals from the denial of an award of future medical benefits. Interior appeals from the decision of the Labor and Industrial Relations Commission finding Sprung to be permanently and totally disabled. Both parties agree that the award of a credit of $966.40 to Interior was inadvertently granted by the Commission. As modified, the award is affirmed.

Sprung, a 32 year-old-man at the time of the accident, was injured on March 16, 1983, when a cart holding about 10 drywall boards tipped and dropped the boards on top of him. Sprung sustained a back injury involving a severe compression fracture of T–11 greater than 75% and a compression fracture of 10% or less at T–10. In addition, some of the articulate processes of the joints were fractured, and there was complete tearing of some of the ligaments along the back of the spine.

Dr. M.H. Winer, an orthopedic surgeon, performed surgery on the back which involved a fusion of the spine with instrumentation of the fractures using Harrington rods. Sprung also sustained an injury to his right knee, which was diagnosed as a tear of the medial collateral ligament. Dr. Alan Morris, also an orthopedic surgeon, did an arthrotomy of the knee and repaired the ligament.

Nine months after the accident, Dr. Winer released Sprung to work on a light duty status, however such work was not available. Although he continued to complain of pain, on April 17, 1984, he was authorized to return to work; Dr. Winer asked that "the employer give him work with as light duty as possible." He returned to his employment in May, 1984, as a journeyman carpenter and worked for nearly 9 weeks averaging 22.7 hours a week. Sprung complained of pain in his knee, and on July 19, 1984, Dr. Morris removed a loose metal staple. Sprung continued to have back pain, so Dr. Winer decided to remove the Harrington rods. This was done on October 4, 1984; at that time, a repeat fusion procedure was performed at T7–T8. In June, 1985, Dr. Winer evaluated Sprung's condition and believed that he was not able to do his previous construction-type work, but "he could do light work with lifting of no greater than twenty to thirty pounds on a repetitive basis. He was also to avoid climbing, repetitive bending or stooping." Sprung did not return to work.

The administrative law judge found Sprung to be permanently and totally disabled and awarded him a weekly sum for life. Further, the administrative law judge awarded Sprung "any future medical, hospital or nursing care or services that may be shown to be the result of this accident."

On appeal to the Commission, the Commission found that Sprung was permanently and totally disabled, but that an award of future medical damages was not supported by the record. Additionally, the Commission awarded a credit to Interior of $966.40.

## Sprung's Appeal

Sprung asserts that the Commission erred in denying future medical, hospital, and nursing benefits to the employee because the Commission improperly concentrated solely on expert testimony on this issue and ignored the substantial, competent evidence of the nature and extent of employee's injuries and the testimony regarding his current condition. Interior, on the other hand, says that (1) the award of future medical benefits was not supported by competent and substantial evidence and (2) the issue of future medical benefits was not raised as an issue to be resolved at the hearing, therefore the Commission was correct in denying future medical benefits.

■ Our review of this claim is limited to a determination of whether the award is supported by competent and substantial evidence on the whole record when viewed in the light most favorable to the Commission's award. *O'Donnell v. Guarantee Electric Co.*, 690 S.W.2d 190, 191 (Mo.App. E.D.1985). The Commission found that the testimony of all physicians was silent as to any need for future medical care, and concluded that there was a lack of competent and substantial evidence to support the administrative law judge's award of future medical benefits. We have reviewed the testimony of the physician who testified in behalf of Sprung and are unable to find any question to, or answer from, him concerning the need for future medical care. Dr. Morris was asked by Interior as to Sprung's need for further medical care referable to the knee; he responded that there was no need. Likewise, Dr. Winer was asked by Interior as to Sprung's need for further medical care; he also stated that Sprung did not need any further medical care. At the hearing before the administrative law judge on April 3, 1986, Sprung indicated that he was not currently on any medication, and that he had received no medical care since he was examined by Dr. Winer on June 18, 1985, and Dr. Morris on October 3, 1985. Considering the testimony of the physicians, as well as that of Sprung, the Commission's denial of future medical care is supported by competent and substantial evidence. In view of our holding, we do not reach the other ground raised by Interior. Point denied.

Sprung's second point is that the Commission erred in awarding Interior a credit of $966.40. Interior concedes the point. The credit attempted to reimburse Interior for temporary total disability payments made by it to Sprung while he had unsuccessfully attempted to return to the work force. The Commission determined that Sprung had worked 204 hours, totalling 5.1 total work weeks. Multiplying the 5.1 work weeks by the assumed disability benefit of $189.49, the Commission awarded Interior a credit of $966.40. Sprung, however, did not receive disability benefits during his brief return to work and Interior acknowledges that it is not entitled to this credit. Accordingly, the Commission's award is modified to delete the credit of $966.40.

## Interior's Appeal

Interior asserts that the Commission erred in awarding Sprung permanent and total disability because such an award was not supported by sufficient, competent evidence. Specifically, Interior asserts that the award was not supported by sufficient medical evidence because the only medical evidence that supports a finding of permanent total disability was from the testimony of Sprung's examining physician, Dr. James F. McFadden, Jr. Interior argues that Dr. McFadden's deposition testimony should not have been received into evidence over its objection that no medical report was furnished seven days before his deposition was taken. Interior relies on § 287.210.3 and .5, which state:

3. The testimony of any physician who treated or examined the injured employee shall be admissible in evidence in any proceedings for compensation under

this chapter, but only if the medical report of the physician has been made available to all parties as in this section provided. Immediately upon receipt of notice from the division or the commission setting a date for hearing of a case in which the nature and extent of an employee's disability is to be determined, the parties or their attorneys shall arrange, without charge or costs, each to the other, for an exchange of all medical reports, including those made both by treating and examining physician or physicians, to the end that the parties may be commonly informed of all medical findings and opinions. The exchange of medical reports shall be made at least seven days before the date set for the hearing and failure of any party to comply may be grounds for asking for and receiving a continuance, upon proper showing, by the party to whom the medical reports were not furnished. If any party fails or refuses to furnish the opposing party with the medical report of the treating or examining physician, as in this section provided, upon the objection of the party who was not provided with the medical report, the physician shall not be permitted to testify at that hearing.

5. As used in this chapter the terms *"physician's report"* and *"medical report"* mean the report of any physician made on any printed form authorized by the division or the commission or any complete medical report. As used in this chapter the term *"complete medical report"* means the report of a physician giving patient's history, complaints, details of the findings of any and all laboratory, X-ray and all other technical examinations, diagnosis, prognosis, nature of disability, if any, and an estimate of the percentage of permanent partial disability, if any (emphasis in original).

Dr. McFadden examined Sprung on July 25, 1985. Although a copy of his letter is not included in the legal file, at the beginning of Dr. McFadden's deposition, Interior's attorney described the August 1, 1985, letter as one "lacking in complaints, X-ray findings, diagnosis, and prognosis, and is completely void of any physical findings on examination, and also fails to distinguish the nature of any disability referred to." Interior then objected to the doctor's entire testimony on the basis that the letter was not a complete physician's report as required by § 287.210.5. At the hearing, the deposition was received in evidence, subject to that objection.

 Based on Interior's description of the letter, which Sprung does not contest, it is apparent that Dr. McFadden's letter dated August 1, 1985, was not a "physician's report" or a "medical report" as those terms are defined in § 287.210.5. To fall within either of those categories, the report must be on a printed form authorized by the Division of Worker's Compensation or the Labor and Industrial Relations Commission; his letter was not on any such approved form. Neither was it a "complete medical report" as described in § 287.210.5. A "complete medical report" must contain the patient's (1) history, (2) complaints, (3) details of the findings of any and all laboratory, X-ray, and all other technical examinations, (4) diagnosis, (5) prognosis, (6) nature of disability, if any, and (7) an estimate of the percentage of permanent partial disability, if any. Dr. McFadden's report did not contain items 2, 3, 4, 5, and 6; thus it was not a complete medical report.

Section 287.210.3 requires that there be an exchange of all medical reports "to the end that the parties may be commonly informed of all medical findings and opinions." The exchange is to occur "immediately" upon receipt of notice of a hearing date, and the burden of arranging for this exchange is on the parties or their attorneys. Although the exchange is to take place immediately, the statute does not contain a penalty for failure to do so. However, if the exchange does not occur at least seven days before the hearing, the statute provides that the party not receiving the report may ask for, and should receive, a continuance of the hearing. Further, the physician whose report was not furnished "shall not be permitted to testify at that hearing." Section 287.210.3.

From the foregoing, it is clear that Sprung did not furnish Interior with a complete medical report seven days before Dr. McFadden's deposition, taken on September 5, 1985. As a result, Interior says it "had no adequate opportunity to cross-examine the doctor in regards to his findings and were surprised and prejudiced by them."

Our research discloses one previous case where an employer argued that the "seven day rule" should date back from the date of a deposition intended for use at a hearing rather than the date of the hearing itself. In *Ford v. Bi–State Development Agency*, 677 S.W.2d 899 (Mo.App.E.D. 1984), a medical report was furnished six days prior to the taking of the doctor's deposition. The *Ford* court specifically stated that it "need not decide the correctness of this application of the statute." In *Ford,* an objection to the non-compliance with the statutory requirement was made for the first time when the deposition was offered into evidence. As a result, the court held that the objection was not timely as required by Rule 57.07(d). Here, however, Interior did object at the commencement of the deposition.

Our experience indicates that a physician seldom testifies in person at a worker's compensation hearing. Rather, as here, most physician testimony is submitted by deposition. Thus, possession of a complete medical report seven days before deposition would enable a party to have, as Interior suggests, an "adequate opportunity to cross examine the doctor." However, the statute does not so provide; it operates on an assumption that the physician will testify in person, and requires that the exchange take place seven days before hearing. The statute is silent as to testimony by deposition.

When a party does not receive a physician's report, medical report, or complete medical report before deposition, it would appear that the party has at least two options. First, as was done here, the party can cross examine the physician immediately following direct examination. If during the deposition, this party decides that further cross-examination is necessary, he is free to schedule further cross-examination. The second option would be to postpone all cross-examination until he has had an opportunity to review the testimony and prepare for cross-examination. Under either of these options, the party "not at fault" would be (1) "informed of all medical findings and opinions" and (2) able to prepare for cross-examination. Such procedure protects the rights of that party.

■ In this case, even assuming that a proper medical report was required to be given seven days before Dr. McFadden's deposition, we fail to see how Interior was prejudiced by Sprung's failure. Dr. McFadden's deposition was taken on September 5, 1985, and the cross-examination of him by Interior consumes 30 pages of testimony. Although the hearing before the administrative law judge was originally scheduled for September 25, 1985, it was not held until April 3, 1986. The record does not disclose any efforts made by Interior to further cross-examine Dr. McFadden or to seek a continuance of the hearing. Rather, the record reflects that the only relief sought by Interior was total exclusion of the deposition. In view of the seven months between the taking of the deposition and its receipt in evidence, we are unable to say that Interior sustained prejudice as a result of the failure to obtain a complete medical report seven days before the deposition. Therefore, Dr. McFadden's testimony could be considered by the administrative law judge and the Commission.

■ Apart from the deposition of Dr. McFadden, there was substantial competent evidence to support the Commission's award. Although Sprung completed twelfth grade, he had failed three grades and was a poor student. Sprung began working as a roofer, but left that work for a year and a half, while he did assembly line work at a factory. Thereafter, he worked as a journeyman carpenter until the accident occurred. All of these jobs required lifting, bending, and stooping. He received a severe injury to his back, which required two operations and the wearing of

a back brace for months. His right knee was badly damaged. He cannot bend over for very long without a "whole lot of pain." If he sits, or stands, too long, he hurts; he is in bed several hours a day. The brushing of his teeth makes the upper portion of his back hurt. He has difficulty crossing his legs, and can't put one knee over the other. Dr. Winer acknowledged that Sprung could not return to his previous construction type work; that he couldn't do repetitive lifting of more than twenty to thirty pounds; and he was to avoid climbing, repetitive bending or stooping. The administrative law judge observed Sprung and saw his physical limitations. The Commission adopted the findings of the administrative law judge, including the finding that Sprung "cannot do any of the work he has been trained in. I further find that in view of his inability to walk significant distances, his extreme limitation with regard to bending or twisting, his inability to remain seated for other than short periods of time and inability to use his arms above the shoulder level without sharp increase of pain, that there are no jobs on the labor market for which claimant should or could be hired." Thus, even if Dr. McFadden's deposition testimony should not have been considered by the Commission, the findings of the Commission are still supported by competent and substantial evidence and are not contrary to the law or overwhelmingly against the weight of the evidence. *Ford*, 677 S.W.2d at 904. Finding no error, Interior's point is denied.

The award of the Commission is modified to delete the credit of $966.40, and, as modified, is affirmed.

SIMON, P.J., and CRANDALL, J., concur.