Sylvia TALLEY, Employee/Respondent,

v.

RUNNY MEADE ESTATES, LTD.,
Employer/Appellant,

and

American Casualty Co.,
Insurer/Appellant.

No. 60840.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 28, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
June 9, 1992.

Application to Transfer Denied
July 21, 1992.

Robert E. Bidstrup, Gailyn Hatcher, Evans & Dixon, St. Louis, for employer, appellant.

Mark F. Haywood, Barklage, Barklage, Haywood & Brett, St. Charles, for employee, respondent.

GRIMM, Presiding Judge.

Runny Meade Estates, employer, and its insurer, appeal a decision by the Labor and Industrial Relations Commission. The Commission affirmed an administrative law judge's finding of permanent and total disability and award of future medical benefits. Employer contends that there was no substantial evidence to support either ruling and that both rulings are against the overwhelming weight of the evidence. We disagree and affirm.

### I. Background

In 1986, claimant Sylvia Talley and her husband were hired by employer to manage its mobile home park. On June 24, 1986, claimant was crossing the street to show a mobile home when she tripped on a bad spot in the pavement and fell. Claimant, who was knocked unconscious, fractured her left elbow and injured her head, neck, back, and left shoulder. The elbow fracture required surgery.

Claimant did not return to work again until nearly a year later. However, claimant testified she continued to receive her normal monthly salary for that year when she did not work.

She returned to work in June of 1987, but she and husband were terminated within two weeks. They learned of the reason when they filed for unemployment. At that time, employer told them they were terminated because husband's involvement with a mobile home service company created a conflict of interest. However, husband had been involved with the company for over two months before claimant returned to work.

Claimant never received any unemployment benefits, but she and husband were employed by a mobile home park in Indianapolis in July of 1987. They were employed as a team and each was to work 45 hours a week. Because claimant had difficulty typing due to her injuries, the mobile home park employed another person about 24 hours a month to do the typing. Claimant also testified that because she was unable to work eight hour days, the mobile home park hired an assistant for her in addition to the typist.

This arrangement continued until October of 1988, when the park was purchased by new owners. The new owners fired claimant and husband, because, according to claimant, "they would not pay two people to do one person's job." Claimant apparently was referring to her paid assistant.

Claimant has seen several doctors because of her injuries. Their opinions conflict as to the severity of claimant's injuries or if those injuries are the cause of headaches and neck pains claimant currently experiences. However, we review the record " 'in the light most favorable to the decision, deferring to the Industrial Commission when it resolves issues concerning the credibility and weight to be given to conflicting evidence....' " *Hagan v. Paris & Osbourne Chevrolet,* 667 S.W.2d 1, 2 (Mo.App.E.D.1984) (citation omitted).

Dr. Daniel Phillips, a board certified neurologist, examined claimant at her request in February of 1989. He testified that during his examination, claimant was unable to raise her left arm up to a position horizontal with the ground. Dr. Phillips said he believed claimant had made an honest effort and had no more motion than that in the shoulder.

Dr. Phillips also noted that claimant held her left arm bent at a 90 degree angle at the elbow. Claimant was only able to extend the arm another 10 degrees; she was unable to extend out completely straight (or 180 degrees) during the examination.

Dr. Phillips also said he believed that migraine headaches and stiffness in claimant's neck, coupled with her elbow and shoulder condition, rendered her "a hundred percent disabled." He said he did not believe claimant would be able to return to any type of employment at any time in the future.

Employer presented evidence of physicians' opinions contrary to Dr. Phillips' testimony. The gist of their testimony is that claimant had much greater mobility in her shoulder and elbow than reported by Dr. Phillips, her headaches were unrelated to injuries resulting from the accident, and she was not permanently and totally disabled.

## II. Commission's Finding of Permanent Total Disability

In its first point, employer contends the Commission erred in finding claimant was "permanently and totally disabled due to the injury at June 24, 1986 because the decision ... was not supported by substantial evidence and the overwhelming weight of the evidence showed that claimant had continued to hold herself out as employable ... was able to work and had ... been employed by two different employers."

It is our duty to "view the record in the light most favorable to the findings and award of the Commission, whose award must be affirmed if it is supported by competent and substantial evidence." *Matzker v. St. Joseph Minerals Corp.,* 740 S.W.2d 362, 363 (Mo.App.E.D.1987).

In determining if claimant is totally disabled, the Commission must decide "whether, in the ordinary course of business, any employer would reasonably be expected to hire her in her present physical condition and reasonably expect her to perform the work for which she is hired." *Fischer v. Archdiocese of St. Louis,* 793 S.W.2d 195, 199 (Mo.App.E.D.1990). Employer contends that claimant was not totally disabled because she worked for two different mobile home parks after her injury. However, in each case claimant needed an assistant to perform duties she had performed alone prior to the accident. Further, she was fired from both jobs. While claimant testified she was fired from her job with employer because of a conflict of interest, it appears claimant was only informed of this reason when she and husband filed for unemployment.

We have already noted that there is medical testimony that claimant was not totally disabled; however, Dr. Phillips found her to be 100 percent permanently and totally disabled after examining her. When there is conflicting testimony, the Commission is charged with determining the credibility of witnesses. *Id.* The opinion of the administrative law judge, adopted by the Commission, states, "Weighing all the medical evidence, I find Dr. Phillips' findings and opinions to be more persuasive, in light of claimant's testimony and the medical records."

Claimant's testimony was that she was "still having the problem with the constant headaches and the neck aches and back aches. I can't use my shoulder and I have pain in my arm. And when I try to use it, sometimes it will pop and it will lock up for ... three or four days at a time." Claimant stated that she could no longer work as a property manager "because nobody will hire me.... I can only work or stay up a couple, three hours at a time. Then I have to go to bed with an ice pack and heating pad." Claimant also stated she was unable to type or drive a car after the accident. Our review of the record reflects the Com-

mission's decision is supported by substantial and competent evidence. Employer's first point is denied.

### III. Future Medical Treatment

As its second point, employer contends the Commission "erred in finding that the claimant was entitled to future medical treatment, in that there was no substantial evidence or testimony establishing the claimant's need for future medical treatment and the overwhelming weight of the evidence showed that claimant did not need future medical treatment."

Where future medical benefits are awarded, the "medical care must flow from the accident before the employer is to be held responsible." *Modlin v. Sun Mark, Inc.,* 699 S.W.2d 5, 7 (Mo.App.E.D.1985). The claimant must show a "medical causal relationship" between the condition and the accident. *Id.*[1]

Employer calls our attention to *Sprung v. Interior Constr. Serv.,* 752 S.W.2d 354 (Mo.App.E.D.1988), where we affirmed the Commission's denial of future medical benefits. In *Sprung,* we observed that the physicians stated there was no need for any further medical care, and Sprung was not on any medication at the time of the hearing.

Unlike *Sprung,* here claimant testified at the hearing she was still having headaches and was taking medication for them.

Further, employer had claimant examined by at least three physicians, Drs. French, George, and Rosenbaum. Dr. French saw her on January 28, 1988. She complained of severe headaches at that time.

Dr. George saw her December 29, 1988. He reported that she indicated she had "intermittent headaches which had been more severe and more frequent over the last several weeks. She said she was having to take pain pills and most recently had taken Darvocet N 100 mg, sometimes taking four to six tablets a day." He gave her

---

1. In *Modlin,* this court upheld the Commission's denial of future medical benefits because the claimant offered no expert testimony that the aggravation of a pre-existing condition was caused by her subsequent injury; such allegations require expert medical testimony. *Id.*

a prescription for Darvocet that day, and also advised her to take Advil.

Dr. Rosenbaum saw claimant on July 20, 1989. According to the history he obtained from her, "the worst problem she was having relates to chronic recurrence of severe headaches, which she says cause her to take to the bed much of the time, feeling totally unable to stay out of the bed on an all-day basis, currently taking Extra–Strength Tylenol, and perhaps some other medication."

Employer's physicians gave different opinions as to the cause of claimant's headaches, either depression or possibly stress-related. Employee's physician, however, testified the headaches were related to the 1986 injury. As previously noted, we defer to the Commission when it resolves conflicting evidence. *Hagan,* 667 S.W.2d at 2.

Further, Dr. Piper, an orthopedic surgeon who treated claimant after her injury, stated that "it is possible that [claimant] will have an increase in arthritis in the future." Also, Dr. Phillips testified that muscle pulling is probably "going to result in secondary changes and further arthritic changes."

Employer relies on the fact that the only two doctors who testified regarding claimant's need for future medical care testified that she was not in need of additional orthopedic care or neurological care. However, neither doctor testified specifically that claimant would not have future arthritic problems or severe headaches, or that these problems would not require future medical treatment. Furthermore, requiring a claimant to show "the specific medical treatment or procedures that will be necessary in the future ... may put an impossible and unrealistic burden upon the employee." *Bradshaw v. Brown Shoe Co.,* 660 S.W.2d 390, 394 (Mo.App.S.D.1983).

Here, the Commission found that claimant was permanently and totally disabled. In addition, that "claimant is entitled to future medical treatment for problems related to this accident, as provided by the Missouri Workers' Compensation Law." To be entitled to such an award, claimant will need to present competent and sub-

stantial evidence of a "causal relationship" between the treatment and accident, establishing that the treatment flows "from the accident." *Modlin,* 699 S.W.2d at 7. If claimant makes such a showing in the future, a specific award will be justified.

The judgment of the Commission is affirmed.

CRANDALL and PUDLOWSKI, JJ., concur.