Loretta **WOOD**, Respondent,

v.

**DIERBERGS MARKET**, Appellant.

No. 62109.

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 22, 1992.

Raymond J. Flunker, Jeffrey M. Proske, St. Louis, for appellant.

Matthew J. Padberg, St. Louis, for respondent.

CRIST, Judge.

Dierbergs Market (Employer) appeals from a final partial award of the Labor and Industrial Relations Commission (Commission) finding Employer liable for injury suffered by Loretta Wood (Claimant). We affirm.

On July 24, 1990, Claimant was working at her job as a checker at a Dierbergs Supermarket. As part of her duties, she was responsible for ringing up the groceries of customers, which included lifting items from grocery carts and from underneath grocery carts. As Claimant was lifting a gallon of milk from the bottom rack of a cart, she suddenly felt pain in her lower abdomen. The pain was concentrated in her left groin area and was so sharp she could hardly move. She also experienced some incontinence at that time. Claimant was taken to the emergency room.

Claimant suffered a previous injury while working at this same Dierbergs in March of 1988. While lifting two cases of beer, she suffered a bladder prolapse. As a result, she had to have a bladder suspension which kept her off work for approximately fourteen months until May of 1989. During those fourteen months, Claimant underwent several surgeries to repair the bladder prolapse and to alleviate some symptoms which arose after the original bladder repair. Several of the surgeries were office procedures to remove infected stitches.

In May of 1989, Claimant returned to Dierbergs as a checker. She was in good physical health but suffered a slight amount of incontinence and needed to use the bathroom about once an hour. She also had a lifting restriction of ten pounds. She worked without any difficulties until the July 24, 1990 injury.

Shortly after the July, 1990 occurrence, Claimant felt a lump develop in her lower left groin area about the size of an egg. The lump would appear and stay for a period of time and then recede for a period of time. Claimant underwent examinations and treatment by different physicians to determine the etiology of her problems. In February of 1991, after seeing a series of doctors, Claimant was referred to Dr. Hurley, a general surgeon. Dr. Hurley performed exploratory surgery and discovered and repaired a "very definite direct inguinal hernia." Dr. Hurley then instructed Claimant to rest, refrain from lifting, and stay home from work for at least six weeks. At the time of the hearing, Claimant was still unable to work due to pain and incontinence.

"We examine the record in the light most favorable to the award. If the award is supported by competent and substantial evidence, we will not disturb it." *Raines v. City of St. Louis,* 711 S.W.2d 544, 545 (Mo.App.1986).

■ In Employer's first point relied on, it essentially argues (1) the July, 1990 incident was not an accident or unusual strain, and (2) Claimant's injury was pre-existing. Section 287.195 of the Workers' Compensation Act provides that in order to be compensated for a hernia resulting from a work-related injury, a Claimant must prove:

(1) That there was an accident or unusual strain resulting in hernia;

(2) That the hernia did not exist prior to the accident or unusual strain resulting in the injury for which compensation is claimed.

"The term 'accident' is to be liberally construed, focusing 'on the fact that the injury has occurred rather than what act or force immediately preceded the injury.'" *Viola v. Custom Coatings, Inc.,* 664 S.W.2d 266, 267 (Mo.App.1984) *quoting Wolfgeher v. Wagner Cartage Service, Inc.,* 646 S.W.2d 781, 783–785 (Mo.banc 1983).

Employer admits the accident took place within the normal scope of Claimant's job. Thus, assuming the July, 1990 incident caused Claimant's injury, it qualifies as an "accident or unusual strain" under *Wolfgeher* and *Viola.*

Employer also charges the record lacks substantial evidence to support that on July 24, 1990, Claimant "did sustain a new and separate accidental injury ... in that she had a prior injury to the same area of her body ... and as there is no medical evidence of any new injury related to the injury of July 24, 1990."

The question is whether *the* hernia for which compensation is sought is pre-existing, not whether Claimant had *any* pre-existing injuries. Claimant testified (1) before the July, 1990 injury, she never had been diagnosed as having a hernia; (2) after the July, 1990 injury, her incontinence worsened; and (3) she had been able to work without difficulties from May, 1989 to July 24, 1990, but has been unable to work since. *See Issac v. Atlas Plastic Corp.,* 793 S.W.2d 165, 166 (Mo.App.1990).

Dr. Hurley's records indicate Claimant had a hernia which he repaired in April, 1991. Dr. Berkin testified that, before July, 1990 and as a result of Claimant's bladder prolapse, Claimant suffered some incontinence and frequent urinary tract infections but was able to work. He acknowledged some of Claimant's problems for which she sought treatment after the July, 1990 incident were the same type as those resulting from her bladder prolapse. However, he stated that those problems were now more severe. Also, he noted the bulge or swelling in Claimant's side was not present until after the July, 1990 incident. He said this bulge and also the pain Claimant experienced while stooping or lifting was consistent with a hernia. He also stated Claimant was now not able to work.

■ Employer argues that Dr. Berkin's testimony was not admissible because Claimant failed to comply with the § 287.-210.3, RSMo 1986. That section states that, upon receipt of notice setting a date for hearing of a workers' compensation case, the parties must immediately make available the medical report of any physician who will testify. "[I]f the exchange does not occur at least seven days before the hearing, the statute provides that the party not receiving the report may ask for, and should receive, a continuance of the hearings. Further, the physician whose report was not furnished 'shall not be permitted to testify at the hearing.'" *Sprung v. Interior Construction Service,* 752 S.W.2d 354, 357 (Mo.App.1988).

The statute is silent as to testimony by deposition. However, we need not address whether it applies to deposition testimony because Claimant's failure to deliver the records within seven days of the deposition did not prejudice Employer. "When a party does not receive a physician's report, medical report, or complete medical report before deposition, it would appear that the party has at least two options. First, as was done here, the party can cross-examine the physician immediately following direct examination. If during the deposition, this party decides that further cross-examination is necessary, he is free to schedule further cross-examination. The second option would be to postpone all cross-examination. Under either of these options, the party 'not at fault' would be (1) informed of all medical findings and opinions and (2) able to prepare for cross-examination." *Id.* at 358.

Employer cross-examined Dr. Berkin extensively. Further, the record does not indicate Employer attempted to seek further cross-examination or seek a continuance. Under these circumstances, we find no prejudice. *See Id.* Dr. Berkin's testimony was properly considered, and we find sufficient evidence of a new injury. Point denied.

■ In Employer's second point, it asserts the record lacks substantial evidence of causation because no doctor testified "as to a medical causal relationship" between the July, 1990 incident and Claimant's hernia.

We disagree. Dr. Berkin testified the July, 1990 incident caused Claimant's hernia. Dr. Berkin and Dr. Walter both testified Claimant's symptoms immediately following the occurrence were consistent with a hernia. Claimant produced evidence from which it reasonably could have been found that such injury resulted from the cause for which Employer was liable. *Dolen v. Bandera's Cafe & Bar*, 800 S.W.2d 163, 164 (Mo.App.1990). Claimant met her burden. Point denied.

■ In its third point, Employer asserts the record lacks sufficient evidence to show "a causal relationship between [Claimant's July 24, 1990 incident] and the subsequent medical attention received ... in that the medical attention allegedly provided by Dr. Muckerman, Dr. Parson and Dr. Gaum is for the pre-existing condition and as their records are not in evidence, and as there is no testimony as to the July 24, 1990 incident and the treatment by Dr. Hurley."

Claimant did not produce any actual medical bills but provided a list of medical expenses she incurred from the time of the injury. The list begins with ambulance, radiology, and emergency room expenses on July 24, 1990. After that, it reflects charges from Doctors Parsons, Muckerman, Gaum, and Hurley. It also lists charges for St. John's Mercy Medical Center, West County Radiology, and surgery related charges. Claimant presented St. John's hospital records of the hernia surgery.

Claimant testified that, in her opinion, all of the charges listed were incurred as a result of the July 24, 1990 incident, only. She said emergency room personnel recommended she see Dr. Parsons. Dr. Parsons ran tests on her shortly after the injury but "couldn't actually find anything." She stated Dr. Parsons referred her to Dr. Muckerman, a gynecologist. Dr. Muckerman performed tests, then referred her to

Dr. Gaum, a urologist. Dr. Gaum performed tests and eventually referred Claimant to Dr. Hurley, the first to diagnose and treat her hernia.

Dr. Berkin testified Claimant was unable to work as a result of the July 24, 1990 incident. He was then asked:

Do you have an opinion as to whether or not the treatment [Claimant has] received up till this time which I've described generally as some testing, sonograms, urograms, urodynamic studies, has that treatment she's received up to now been reasonably necessary for this condition?

He responded:

It's been necessary. It hasn't been effective, but it's been necessary.

Dr. Berkin admitted Claimant's treatment for incontinence and bladder infections after July, 1990 was the same or similar to treatment she received after the 1988 injury. However, Dr. Berkin testified that her condition worsened as a result of the July, 1990 injury, and she now was unable to work as a result of the July, 1990 injury.

The record reflects Claimant's physician visits and related tests were part of a continuing search for treatment for her July 24, 1990 injury beginning with her emergency room visit. Each physician, beginning with the emergency room doctor, referred her to the next physician. In light of this and in light of Dr. Berkin's and Claimant's testimony the expenses were related to the injury, we find substantial and competent evidence to support that Claimant's expenses resulted from the July 24, 1990 injury. Point denied.

In its fourth point, Employer asserts the record lacks substantial evidence to support that any time lost from work was medically necessary and directly related to any specific injury suffered on July 24, 1990, in that there is no evidence that any doctor took her off work following the July 24, 1990 incident.

Dr. Berkin testified Claimant could not work at the time of the hearing and her

present condition was a result of the July 24, 1990 incident. Point denied.

Judgment affirmed.

AHRENS, P.J., and REINHARD, J., concur.